**Albert RANDON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00183–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 21, 2003.

Decided March 10, 2003.

Rehearing Overruled May 6, 2003.

Mel Burridge, Angleton, for appellant.

David P. Bosserman, Assistant District Attorney, Jeri Yenne, Criminal District Attorney, Angleton, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Albert Randon, age seventy, was indicted for the aggravated sexual assault of G.R.,[1] a child who was both his neighbor and Randon's brother's granddaughter. Randon pled not guilty. The jury found Randon guilty as charged in the indictment. The trial court assessed punishment at twenty years' imprisonment. The trial court also ordered Randon's sentence be served concurrently with his ten-year sentences in two community supervision revocation cases, case number 21,110 (on appeal as appellate cause number 06–01–

---

1. We refer to the complainant by the pseudonym "G.R."

00184–CR) and 21,111 (on appeal as appellate cause number 06–01–00185–CR).[2] In two issues for appellate review, Randon contends the trial court erred (1) by allowing testimony to be read to the jury without first determining there was a dispute among the jury members as to specific testimony, and (2) by admitting evidence of extraneous bad acts and crimes when the State did not comply with the notice requirements of Article 37.07, Section (3)(g) of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp.2003). For the reasons set forth below, we affirm the trial court's judgment.

## I. Reading Back Witness Testimony to Jurors

### A. The Standard of Review

■ Randon first contends the trial court erred by reading back testimony to the jury without first requiring the jury to certify there was a dispute among its members regarding specific testimony. A trial court's decision to read back testimony from the court reporter's notes is reviewed for abuse of discretion. *Robison v. State*, 888 S.W.2d 473, 481 (Tex.Crim.App. 1994). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g). Additionally, as a prerequisite to our review, the appellant must demonstrate he or she objected to the trial

court's decision to read back witness testimony to the jury. TEX.R.APP. P. 33.1; *Boatwright v. State*, 933 S.W.2d 309, 310–11 (Tex.App.-Houston [14th Dist.] 1996, no pet.).

### B. Analysis

Article 36.28 of the Texas Code of Criminal Procedure provides, "In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other...." TEX.CODE CRIM. PROC. ANN. art. 36.28 (Vernon 1981). After it retired to deliberate guilt/innocence, the jury sent a note asking to review the testimony of Brenda Randon and Margaret Carter McNeese. The trial court denied the request and instructed the jury the Texas Code of Criminal Procedure does not allow reading back testimony unless the jurors have a dispute regarding specific testimony. Addressing the jury, the trial court stated the following:

> But if you do have a disagreement as to what a witness testified to, send me a note out telling me you disagree as to this particular point, and what we'll do— and you want it read back—I will have Larry search his notes and he will find everything on that particular point, and then when he finds it, then we will bring you back and put you in the box and then he will read all that back verbatim as to what you are in disagreement over. Then you can judge what it means at that point.... As far as the testimony of Brenda Randon and Dr. McNeese, if you are in disagreement as to what they testified to, just tell me what you are in disagreement over. Specify it enough

**2.** The issues raised in Randon's other appellate cases are unique to those cases. We address the merits of those appeals in separate opinions.

so he will know what to look up.... I don't make these rules. The Supreme Court makes them. That's what it is. Please resume your deliberations. If you want anything read back, let me know.

The jury later sent a second note stating, "We have some concerns about Dr. McNeese's testimony concerning the clefts to the hymen. May we reconvene on Thurs. morning to hear this?" The trial court told the jury it would have the court reporter look up the requested information and provide it to the jury on Thursday morning. Randon did not object to the trial court's response.

 Randon's failure to object to having witness testimony read back to the jury waived appellate review of any alleged error.

> As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context....

Tex.R.App. P. 33.1. An appellant must object as soon as he or she becomes aware of the error. *Boatwright,* 933 S.W.2d at 311 (citing *Hollins v. State,* 805 S.W.2d 475, 476 (Tex.Crim.App.1991)). In this case, the record does not demonstrate Randon objected to the trial court's decision to allow the court reporter to read testimony in response to the jury's request. Accordingly, nothing has been preserved for our review.

 Even if the error had been preserved, we believe the trial court did not abuse its discretion in this case by allowing the court reporter to read the testimony.

The Texas Court of Criminal Appeals has said there are two competing concerns in answering questions for juries when they deliberate and request testimony be read back. *Robison,* 888 S.W.2d at 480. On one hand, reading testimony might be seen as a comment by the trial court on the weight of the evidence. *Id.* On the other hand, jurors must have a means of resolving factual disputes. *Id.*

Randon cites *Moore v. State,* 874 S.W.2d 671 (Tex.Crim.App.1994), in support of reversal. In *Moore,* the jury asked that specific testimony be read back. *Id.* at 672. The appellant objected, requesting the trial court inform the jurors they must certify there was a dispute among them as to a particular point in the testimony. *Id.* The trial court denied the request and informed the jury the court reporter would not be available until later. *Id.* The jury continued to wait for two hours more before sending out another note reading, "We cannot progress any further until [the witness'] testimony is read for us. Is the court reporter here so she can read that portion of the testimony?" *Id.* The trial court then had the reporter read the requested testimony over the appellant's objection that the jury had not certified the existence of a dispute. *Id.* The Texas Court of Criminal Appeals held that the jury's request did not indicate a disagreement as required under Article 36.28. *Id.* at 674.

*Moore* is distinguishable from the case at bar. First, in *Moore,* the jury's successive notes do not demonstrate a pattern of narrowing the jury's request from a global request for testimony to a specific question targeted to one witness' responses during cross-examination. Second, the trial court in *Moore* did not instruct the jury under Article 36.28 of the Texas Code of Criminal Procedure. Third, the appellant in *Moore* objected to the trial court's proce-

dure. In the case at bar, by contrast, the jury's first note requested the general testimony of two witnesses, and its second note solicited the fact-specific testimony of only one witness. The trial court in this case had also previously instructed the jury in accordance with Article 36.28, and the context of the jury's subsequent request, especially given its use of the word "concerns," strongly suggests a dispute among jurors over the requested testimony. And, most importantly, Randon did not object to the trial court's decision to allow the court reporter to read back testimony. *Moore* is not analogous to the facts of this case.

*Robison* presents facts that more closely parallel those in the case at bar. In *Robison*, the trial court received a series of three successive notes requesting evidence and testimony from the trial. *Robison*, 888 S.W.2d at 480. The first request asked, in part, for a transcript of the testimony from a specific witness. *Id.* The request did not state the jurors had a dispute over the testimony. *Id.* The trial court instructed the jury that "the law provides that if the Jury disagrees as to the testimony of any witness, they may, upon application to the [trial] Court, have read to them from the Court Reporter's notes that part of a witness' testimony on the particular point in dispute and *no other*." *Id.* The third note from the jury asked for a "transcript of Hatcher's cross-examination of Dr. Price, in which Hatcher read excerpts from, the reporter of the Chief of Psychiatry at TCOM." *Id.* The Texas Court of Criminal Appeals held:

> Here, there were three separate requests made by the jury in determining whether a dispute existed, each becoming increasingly narrow in scope. Additionally, the trial court clearly informed the jury that testimony would be read back only in the event of a dispute after each request for information. By con-

sidering the last note requesting the testimony in conjunction with prior notes from the jury and the corresponding instructions from the trial court, it was not unreasonable to infer a disagreement among the jury regarding Dr. Price's testimony. The trial court was properly cautious in observing the competing concerns of article 36.28 of the Texas Code of Criminal Procedure.

*Id.* at 481. The Texas Court of Criminal Appeals then found the trial court had not abused its discretion by reading back witness testimony to the jury. *Id.*

In the case at bar, the jury first sent a general request that the testimony of two witnesses be read. The trial court instructed the jury that it could not have the testimony read back unless the jury was in disagreement about the testimony and asked that, if there was a dispute regarding certain testimony, the jury narrowly tailor its request. We believe this instruction complied with the requirements of Article 36.28.

The jury's second note asks for specific testimony (clefts in the hymen) from a specific witness (Dr. McNeese). It is appropriate to consider the last note in conjunction with the trial court's prior instruction. In that context, it was not unreasonable for the trial court to infer a disagreement among the jury members regarding Dr. McNeese's testimony, because the jury's subsequent request was narrower than its first request and was made after the trial court had instructed the jury that it could not read back testimony unless the jury had a disagreement. *See Robison*, 888 S.W.2d at 481. Accordingly, we cannot say the trial court abused its discretion. We overrule Randon's first point of error.

## II. Compliance with Texas Code of Criminal Procedure Article 37.07

### A. The Standard of Review

▆▆ Randon next contends the State failed to provide sufficient notice of its intent to introduce extraneous offense evidence. Article 37.07 of the Texas Code of Criminal Procedure requires the State to give advance notice of its intent to introduce evidence of extraneous crimes or bad acts not resulting in final convictions; the notice, however, must indicate the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g). The State's duty to give advance notice is triggered by the defendant's timely request. *Id.* We review a trial court's decision to exclude or admit evidence of extraneous bad acts under an abuse of discretion standard. *Mitchell v. State,* 931 S.W.2d 950, 953 (Tex.Crim.App.1996).

**B. Analysis**

On May 3, 2001, the State filed a pretrial notice of extraneous offenses. The notice read, "Defendant was involved in oral sex with [G.P.][3] in Brazoria County, Texas, when [G.P.] was about eight years of age. The same offense occurred on at least three different occasions. The approximate date of the offenses were [sic] in 1991."

▆▆ On June 28, 2001, the State filed a pretrial notice advising Randon that it intended to offer extraneous offense information that Randon "committed a sexual offense against [P.T.] in Brazoria County, Texas on or about 1997; Defendant committed a sexual offense against [W.B.] in Brazoria County, Texas on or about 1997; [and] Defendant committed a sexual offense against [S.C.] in Brazoria County, Texas on or about 1975."[4]

On July 2, 2001, Randon filed a motion in limine that asked the trial court to, in part, "[r]equire the State to serve notice to the Court and Defendant's counsel at the pre-trial hearing of any specific acts of misconduct or evidence of extraneous offenses which the State seeks to introduce at trial." During the punishment phase of the trial, Randon objected to the testimony of G.P. regarding extraneous bad acts. Randon claimed the State had not complied with Article 37.07, Section 3(g) of the Texas Code of Criminal Procedure because the State's notice did not include the specific date on which the bad act allegedly occurred and instead only listed the year (1991) as the date of the offense. The trial court overruled Randon's objection. G.P. then testified to various encounters with Randon that included inappropriate touching and oral sex.

The State also called P.J.M.[5] Randon objected to P.J.M.'s testimony based on "lack of notice.... The State only gave me notice of [P.J.M.] July 3rd." Randon's objection did not specifically direct the trial court's attention to Article 37.07, Section 3(g). The trial court overruled Randon's objection on the ground that the State is not required to give notice under Rules 403 or 404(b) of the Texas Rules of Evidence if the State intends to present evidence of extraneous bad acts during a punishment hearing. *See* Tex.R. Evid. 403, 404(b). P.J.M. then testified that, when she was eight years old, she was sexually assaulted by Randon.

---

3. We use the pseudonym G.P. for the complainant's name in the 1991 Brazoria County offenses.

4. We use the pseudonyms P.T., W.B., and S.C. to identify the three victims listed in the State's notice of bad acts that Randon allegedly committed in 1997 and 1975.

5. We use the pseudonym P.J.M. to identify this complainant's testimony.

The State also called S.C. Randon objected to S.C.'s testimony. Randon claimed he had not received sufficient advance notice that S.C. would be called to testify, because the State did not provide notice until July 3, 2001, of its intent to call S.C., and, therefore, the State's notice was untimely under Article 37.07 of the Texas Code of Criminal Procedure. The trial court overruled Randon's objection without explanation. S.C., age thirty-seven at the time of trial, testified that, when she was twelve years old, she and Randon had sexual intercourse.

The record contains no evidence that Randon supplied a self-executing letter to the State requesting pretrial notice of the State's intent to introduce evidence of extraneous offenses during the punishment phase. *See Hartson v. State*, 59 S.W.3d 780, 787 (Tex.App.-Texarkana 2001, no pet.) (self-executing request triggers Article 37.07 notice requirement). A comparable request does exist as part of Randon's motion in limine, filed July 2, 2003, before trial. However, when a defendant relies on a pretrial motion to request notice of the State's intent to introduce extraneous offense evidence, "it is incumbent upon him to secure a ruling on his motion in order to trigger the notice requirements of that rule." *Simpson v. State*, 991 S.W.2d 798, 801 (Tex.Crim.App.1998) (applying the rule of *Espinosa v. State*, 853 S.W.2d 36 (Tex.Crim.App.1993) for 404(b) notice to Article 37.07, Section 3(g) notice requirements). There is no evidence in the record that the trial court granted Randon's motion in limine of July 2, 2001. Accordingly, the State had no duty to provide advance notice of its intent to introduce extraneous offense evidence during the punishment phase of trial.

Moreover, the notice provided by the State, though not required, was reasonable. Where the extraneous acts went unprosecuted, occurred nine years ago, and involved a victim that was only eight years old at the time, it is unrealistic to expect the State to give notice of exact dates when the witness herself could not remember the exact dates. The State's notice of the year of the extraneous acts was sufficient. Randon's second point of error is overruled.

We affirm the trial court's judgment.