Heath L. Price v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-00391-CR

     HEATH LAMONT PRICE,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 77th District Court
Limestone County, Texas
Trial Court # 8180
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      A jury convicted Heath Lamont Price of capital murder for fatally shooting a police
officer. The court sentenced Price to life imprisonment. Price presents ten issues on appeal. 
We will affirm.
BACKGROUND
      Mexia police officer Ricky Ward went to a local convenience store to assist in a
shoplifting investigation. He went outside upon receiving word that someone was damaging
his patrol car with a tire tool. The man allegedly damaging the car fled, and Officer Ward
pursued. Ward abandoned the pursuit and turned to walk back to the car. As Ward was
returning to the car, a gun was fired from behind a fence. Ward was struck and later died
from the gunshot.
      The Texas Rangers were called to assist in the investigation. They received information
leading them to seek an arrest warrant for Price at his residence in neighboring Ellis County. 
After arresting Price, the officers transported him to the home of a municipal judge to be
advised of the charges against him and of his rights. The officers then transported Price to the
Ellis County jail. At the jail, Price gave two written statements to the officers admitting that
he shot Officer Ward and describing what he did with the handgun afterward.
      The State initially tried Price for capital murder in January 1994. After a guilty verdict,
the court granted Price’s motion for new trial. The parties re-tried the case in July of that
same year. Price is now before this Court via an out-of-time appeal granted by the Court of
Criminal Appeals in November 2001. 
      Price presents ten


 issues in which he contends: (1) the court abused its discretion by
denying his motion to suppress the confessions because they were involuntary; (2) the
confessions are inadmissible because the arrest warrant was not supported by probable cause;
(3) the court abused its discretion by permitting the State to reopen; (4) the court abused its
discretion by denying his motion for an instructed verdict; (5) the court abused its discretion by
allowing an officer to testify “to a triple hearsay oral confession”; (6) the court abused its
discretion by denying his Batson


 challenge; (7) his second trial was jeopardy-barred; (8) he
has been denied a complete reporter’s record; (9) the court abused its discretion by reading
portions of testimony back to the jury; and (10) he received ineffective assistance of counsel.
DOUBLE JEOPARDY
      Price argues in his seventh issue that his second trial is barred by double jeopardy because
the State offered legally insufficient evidence in his first trial and because the State engaged in
misconduct which led to the granting of his motion for new trial.
      A double jeopardy claim must be preserved for appellate review unless “the undisputed
facts show the double jeopardy violation is clearly apparent on the face of the record and . . .
enforcement of usual rules of procedural default serves no legitimate state interests.” Gonzalez
v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000); accord Ramirez v. State, 36 S.W.3d
660, 666 (Tex. App.—Waco 2001, pet. ref’d).
      Price’s contention that the evidence in the first trial was legally insufficient is premised on
his argument that his confessions are inadmissible. However, even inadmissible evidence is
considered when determining a legal sufficiency claim. Wilson v. State, 7 S.W.3d 136, 141
(Tex. Crim. App. 1999); St. Clair v. State, 26 S.W.3d 89, 100 (Tex. App.—Waco 2000, pet.
ref’d).
      The “prosecutorial misconduct” complained of in Price’s motion for new trial following
his first trial was the State’s comment on his trial demeanor during closing argument. 
However, the practice when confronted with such an error has been to remand for a new trial,
not to render a judgment of acquittal. E.g., Veteto v. State, 8 S.W.3d 805, 813, 818 (Tex.
App.—Waco 2000, pet. ref’d). In fact, the Court of Criminal Appeals has expressly held that
appellate rendition of a judgment of acquittal is inappropriate in a case involving a prosecutor’s
improper comment on a defendant’s pre-arrest silence. State v. Lee, 15 S.W.3d 921, 926
(Tex. Crim. App. 2000).
      Price should have pursued his double jeopardy claim in a pretrial habeas proceeding before
his second trial or by a special plea of double jeopardy. See Ex parte Peterson, 117 S.W.3d
804, 807 (Tex. Crim. App. 2003); Tex. Code Crim. Proc. Ann. art. 27.05 (Vernon 1989). 
By failing to do so, he has not properly preserved this issue for our review. His contention
does not meet the Gonzalez requirements for addressing a double jeopardy claim raised for the
first time on appeal. Cf. 8 S.W.3d at 643. Accordingly, we overrule his seventh issue.
BATSON CHALLENGE
      Price claims in his sixth issue that the court abused its discretion by denying his Batson
challenge.
      The State exercised peremptory challenges against two of the four black members of the
venire panel. Price focuses his Batson claim on one of the two black venirepersons whom the
State struck. The prosecutor responded that he struck this venireperson because she was only
twenty, she indicated in a juror questionnaire that she was familiar with the facts of the case
and would have difficulty putting that out of her mind, and several of her relatives had been
prosecuted by his office. Price did not challenge any of these assertions in the trial court.
      A Batson challenge invokes a three-step process. First, the defendant must make a prima
facie showing that the State has struck a veniremember on the basis of race. If the defendant
makes this showing, then the State must provide race-neutral reasons for the strike. If the
State does so, then the defendant has the opportunity to rebut the State’s proffered reasons for
the strike. See Tex. Code Crim. Proc. Ann. art. 35.261(a) (Vernon 1989); Batson v. Ky.,
476 U.S. 79, 96-98, 106 S. Ct. 1712, 1723, 90 L. Ed. 2d 69 (1986); Simpson v. State, 119
S.W.3d 262, 268 (Tex. Crim. App. 2003). “The burden of persuasion remains with the
defendant to prove purposeful discrimination.” Tex. Code Crim. Proc. Ann. art. 35.261(a);
accord Simpson, 119 S.W.3d at 268.
      Assuming without deciding that Price made the required prima facie showing (which the
State does not concede), the State offered race-neutral reasons for the strike. See Ealoms v.
State, 983 S.W.2d 853, 856-57 (Tex. App.—Waco 1998, pet. ref’d). Price did not attempt to
rebut these reasons at trial. The court’s ruling is supported by the record and is not clearly
erroneous. See Simpson, 119 S.W.3d at 268. Accordingly, we overrule Price’s sixth issue.
WRITTEN CONFESSIONS
      Price claims in his first issue that his written confessions were given involuntarily because
of police coercion. He avers in his second issue that these confessions are inadmissible
because his arrest warrant was not based on probable cause.
Pertinent Facts
      A sheriff’s deputy obtained Price’s arrest warrant primarily on the basis of a written
statement given by Natalie Henry. Henry stated that her former boyfriend “Heat” shot Officer
Ward. According to the affidavit presented for issuance of the arrest warrant, Henry also
stated that “Heat” had been recently arrested for evading arrest. A records check led the
deputy to conclude that Henry was referring to Price. Henry disavowed her statement at trial.
      Several officers went to Price’s home to arrest him. Texas Ranger Matt Cawthon was one
of the first to enter Price’s home. Cawthon located Price in a bedroom. When Price turned
away, Cawthon grabbed him by the wrist out of fear that Price might be attempting to retrieve
a weapon. Cawthon held Price against a wall by the neck in an effort to handcuff him. 
Several of Price’s family members were hitting Cawthon in an effort to prevent the arrest. 
Cawthon used one arm to try to fend off these blows as he attempted to arrest Price. Ranger
Ray Nutt testified that he grabbed Price by the hair and pulled him to the ground to assist in
making the arrest. After Price went to the ground, the officers cuffed him and took him to a
patrol car.
      Price’s sister denied that Price resisted arrest in any manner. She testified that one of the
officers hit Price in the mouth and pushed him against a television. She stated that Price also
hit his head against the fireplace as the officers forced him to the ground.
      The officers transported Price to a municipal judge’s home so he could be admonished of
the charges against him and of his rights. Price testified at the suppression hearing that, during
the ride to the magistrate’s house, an officer told him that he would not have fought with Price
during the arrest because “that needle will put you down.” Price took this to be a reference to
a sentence of death by lethal injection. The magistrate testified that Price indicated to her that
he understood each of his rights. Price was then transported to the Ellis County jail. Cawthon
testified that approximately forty-five minutes elapsed between Price’s arrest and his arrival at
the jail.
      A deputy who rode with Price to the jail testified that he read Price’s rights to him again
during the ride to jail and that Price indicated to him that he understood his rights. Ranger
Nutt initially interviewed Price at the jail. Nutt did not read Price his rights again but did ask
him if he understood his rights and if he wished to speak to the officers. Price asked Nutt what
could happen to him, and Nutt responded that he could be prosecuted for capital murder and
that he could possible be sentenced to death. According to Nutt, Price stated that he
understood his rights and wanted to talk. Nutt relayed this information to Ranger Cawthon,
who was the primary investigator, so Cawthon could take Price’s statement. Nutt denied that
he ever threatened Price.
      Cawthon sat down at a table with Price, and they began discussing what happened. As
they talked, Cawthon wrote out a statement for Price. Cawthon read Price this statement as
well as the warnings required by article 38.22, section 2. See Tex. Code Crim. Proc. Ann.
art. 38.22, § 2 (Vernon Supp. 2004). He gave Price the opportunity to make any corrections
which Price desired. Price then signed the statement before Cawthon and two witnesses. 
Cawthon followed the same procedure with Price’s second statement, in which Price described
in more detail what he did with the gun. Cawthon stated that he advised Price before making
the statement that he could receive the death penalty for the offense. In Cawthon’s opinion,
Price did not appear to be fearful during the interview.
      Price testified in the suppression hearing that he did not understand his rights when
Cawthon took his statements. He denied ever admitting that he shot Officer Ward. He stated
that he was fearful because the officer in the patrol car had indicated that he would receive a
lethal injection and because Cawthon told him “they were going to give him an injection if [he]
didn’t say anything.” Price estimated that the officers pressured him for about three hours
before he finally signed the first statement and then for another three hours (until midnight)
before he signed the second statement. Price disavowed the written statements in their
entirety.
      Cawthon explained that the officers used the information provided in Price’s second
statement to obtain a search warrant to find the gun. A magistrate issued this search warrant
about one or two hours after Price arrived at the jail.



Pertinent Authorities
      When an appellant challenges the voluntariness of his confession, we review the trial
court’s ruling under an abuse-of-discretion standard. See Wood v. State, 18 S.W.3d 642, 646
(Tex. Crim. App. 2000). The trial court is the sole judge of the credibility of the witnesses at
a suppression hearing and of the weight to be given their testimony. Wyatt v. State, 23
S.W.3d 18, 23 (Tex. Crim. App. 2000). “The determination of whether a confession is
voluntary is based on an examination of the totality of circumstances surrounding its
acquisition.” Id. (quoting Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995),
rev’d on other grounds sub nom. Penry v. Johnson, 532 U.S. 782, 121 S. Ct. 1910, 150 L.
Ed. 2d 9 (2001)).
      Relevant circumstances for consideration when the accused contends that his confession
was coerced include the “length of detention, incommunicado or prolonged detention, denying
a family access to a defendant, refusing a defendant's request to telephone a lawyer or family,
and physical brutality.” Nenno v. State, 970 S.W.2d 549, 557 (Tex. Crim. App. 1998)
(quoting Armstrong v. State, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985)); Guardiola v.
State, 20 S.W.3d 216, 223-24 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).
      Article 38.22, section 2(a) provides that a written statement made in response to custodial
interrogation is not admissible “unless it is shown on the face of the statement that . . . the
accused, prior to making the statement, either received from a magistrate . . . or received from
the person to whom the statement is made [the required statutory warnings].” Tex. Code
Crim. Proc. Ann. art. 38.22, § 2(a). This requirement is satisfied if the warnings are read to
the accused before he signs the statement, even if the statement is written before the warnings
are read. Dowthitt v. State, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996); Brooks v. State,
991 S.W.2d 39, 41 (Tex. App.—Fort Worth 1998, no pet.).
Application
       Price contends that his statements were coerced because of the force the officers used to
arrest him, because he feared that he could be given a lethal injection soon if he did not
cooperate, and because he was worn down by a six-hour interrogation. He contends that his
statements are inadmissible because Cawthon did not re-read the statutory warnings at the
beginning of the interrogation.
      The testimony of the municipal judge and the officers contradicts Price on these issues. 
Because Cawthon read the warnings to Price before Price signed his statements, the
requirements of article 38.22, section 2 are satisfied. Id. The court’s ruling is supported by
the testimony of the municipal judge and the officers. Thus, the court did not abuse its
discretion by denying Price’s motion to suppression the statements. See Wood, 18 S.W.3d at
646. Accordingly, we overrule Price’s first issue.
      Price argues in his second issue that his statements are inadmissible because the arrest
warrant was not supported by probable cause. However, Price did not challenge the
statements on this basis in the trial court. Accordingly, he has not preserved this issue for our
review. See Tex. R. App. P. 33.1(a)(1); Taylor v. State, 20 S.W.3d 51, 56 (Tex.
App.—Texarkana 2000, pet. ref’d). Thus, we overrule his second issue.
HEARSAY
      Price claims in his fifth issue that the court abused its discretion by permitting an
investigator to testify that he heard from Ranger Nutt that Price said that he shot Officer Ward. 
However, we have already determined that Price’s written confessions were properly admitted. 
Therefore, any error in the admission of this hearsay statement was harmless. See Nonn v.
State, 117 S.W.3d 874, 883 (Tex. Crim. App. 2003). Accordingly, we overrule Price’s fifth
issue.
REOPENING
      Price avers in his third issue that the court abused its discretion by permitting the State to
reopen and offer the testimony of a witness who admittedly perjured herself by implicating
Price in the shooting.
      The State rested its case-in-chief on a Friday afternoon. The State advised the court the
next week that it had discovered another witness that Monday morning who was prepared to
testify that she saw the person who shot Officer Ward. After consulting with defense counsel,
the State showed the witness, Amy Martin, a photo lineup out of which she chose Price as the
shooter. The State also required Martin to take a polygraph examination, which she passed. 
On Tuesday morning, the State asked permission to reopen and offer Martin’s testimony.
      The court conducted a hearing outside the presence of the jury to determine whether the
State was diligent in securing Martin’s testimony and whether her testimony was material. 
After the hearing, Price objected that Martin’s testimony was highly suspect because it was
directly contradicted in many respects by other witnesses. Price also objected that the photo
lineup she viewed was impermissibly suggestive. The court overruled the objections and
permitted the State to reopen.
      Martin testified that she saw Price behind the fence from which the fatal shot was fired. 
She saw him lean around the end of the fence with his arm outstretched. She then heard a
gunshot. Martin ran into a nearby restaurant after that.
      Article 36.02 grants a trial court the authority to reopen a case for the presentation of
additional evidence “at any time before the argument of a cause is concluded, if it appears that
it is necessary to a due administration of justice.” Tex. Code Crim. Proc. Ann. art. 36.02
(Vernon 1981). A “due administration of justice” requires a court to reopen “if the evidence
would materially change the case in the proponent’s favor.” Peek v. State, 106 S.W.3d 72, 79
(Tex. Crim. App. 2003). We review a court’s decision to reopen under an abuse-of-discretion
standard. See Cain v. State, 666 S.W.2d 109, 111 (Tex. Crim. App. 1984); Reeves v. State,
113 S.W.3d 791, 794 (Tex. App.—Dallas 2003, no pet.); accord Peek, 106 S.W.3d at 79.
      The only contested issue in Price’s case is whether he is the person who shot Officer
Ward. Price vigorously challenged the admissibility of his confessions, which were the
primary evidence the State had to prove his identity as the shooter. Giving consideration to the
standard set out in Peek, we cannot say that the court abused its discretion by permitting the
State to reopen and offer Martin’s testimony as additional evidence that Price was the shooter. 
See Peek, 106 S.W.3d at 79. Thus, we overrule Price’s third issue.
 

INSTRUCTED VERDICT/MISTRIAL
      Price contends in his fourth issue that the court abused its discretion by denying his motion
for an instructed verdict and by failing to declare a mistrial sua sponte. We address these
contentions separately.
      Price argues that he was entitled to a directed verdict because his confessions are
inadmissible and the remaining evidence is legally insufficient to sustain his conviction. We
construe this complaint as a challenge to the legal sufficiency of the evidence. See Canales v.
State, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003).
      The State proved that Officer Ward was murdered. Price confessed to the crime. We
have concluded that his confessions are admissible. Accordingly, the evidence is legally
sufficient. See Salazar v. State, 86 S.W.3d 640, 644-45 (Tex. Crim. App. 2002).
      Price argues that the trial court should have declared a mistrial sua sponte because the
parties later stipulated that Martin committed perjury when she testified. The parties prepared
a written stipulation which they published to the jury in which the jury was advised that the
restaurant Martin said she ran into was closed on the occasion in question. The stipulation
further advised the jury that “Martin’s tetimony [sic] should be disregarded in its entirety.”
      At the time the parties reached their stipulation, defense counsel informed the court that he
believed a mistrial was appropriate because of the perjured testimony. However, counsel also
advised the court that Price had rejected this advice and wanted to proceed. Price stated under
oath that he did not want a mistrial and wanted to proceed with the trial. Under the rule of
invited error, Price cannot now complain that the trial court failed to declare a mistrial sua
sponte. See Prytash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999).
      Price also claims that the court should have declared a mistrial sua sponte because of the
admission of certain evidence.


 We have reviewed the items of which Price complains and
conclude that their admission was not, either singularly or cumulatively, “clearly calculated to
inflame the minds of the jury [or] of such a character as to suggest the impossibility of
withdrawing the impression produced on the minds of the jury.” Hinojosa v. State, 4 S.W.3d
240, 253 (Tex. Crim. App. 1999) (quoting Hernandez v. State, 805 S.W.2d 409, 414 (Tex.
Crim. App. 1990)). Accordingly, we cannot agree that the court should have declared a
mistrial.
      For the foregoing reasons, we overrule Price’s fourth issue.
COMPLETENESS OF RECORD
      Price avers in his eighth issue that he is entitled to a new trial because of an incomplete
reporter’s record. Price contends that record is incomplete because it does not include a
transcript of his first trial by which he could prove his double jeopardy complaint and could
demonstrate that he received ineffective assistance of counsel at the first trial and because it
does not accurately reflect what testimony was read back to the jury in his second trial.
      Price should have obtained the record from the first trial and presented it to the trial court
in a pretrial habeas proceeding before his second trial or by a special plea of double jeopardy. 
He cannot seek to do so at this juncture. Cf. Peterson, 117 S.W.3d at 807; Tex. Code Crim.
Proc. Ann. art. 27.05. 
      Price cannot complain that he received ineffective assistance of counsel when trial counsel
persuaded the court to grant a new trial. The result would have been the same if he had been
convicted in the first trial and prevailed on an ineffective assistance complaint on appeal. See
e.g. Turner v. State, 49 S.W.3d 461, 471 (Tex. App.—Fort Worth 2001), pet. dism’d,
improvidently granted, 118 S.W.3d 772 (Tex. Crim. App. 2003).
      The court reporter has corrected the record to include the excerpts of testimony read back
to the jury.
      For the foregoing reasons, we overrule Price’s eighth issue.
READING OF TESTIMONY BACK TO JURY
      Price contends in his ninth issue that the court abused its discretion by reading excerpts of
testimony back to the jury because the jurors did not state that they were in disagreement about
the testimony. However, Price did not raise this objection at trial. Accordingly, this
complaint has not been preserved for our review. See Randon v. State, 107 S.W.3d 646, 648-49 (Tex. App.—Texarkana 2003, no pet.).
      Price also contends that the trial court did not read enough testimony back to the jury to
fairly and adequately answer “the heart” of the jurors’ questions. The jury raised questions
regarding three portions of testimony. The court refused to answer the second because it was
overbroad. Price affirmatively stated that he had no objection to this ruling or to the court’s
proposed response to the third question. Accordingly, he cannot complain of these rulings on
appeal. See Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988); Stallings v. State, 47
S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2001, no pet.).
      In the first question, the jury asked to hear again Ranger Cawthon’s testimony regarding
whether he threatened or hit Price “in the station.” The court proposed to read back a brief
excerpt of Cawthon’s cross-examination in which he stated that he did not hit Price at the jail. 
Price asked that the court also read back to the jury a portion of the cross-examination in which
Cawthon stated that he “possibly” hit Price again “at his house” after holding him against the
wall by the throat during the arrest. The court denied this request.
      We review a court’s decision to read testimony back to the jury for an abuse of discretion. 
Brown v. State, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994). The testimony the court refused
to read back to the jury concerned whether Cawthon hit Price “at his house.” Therefore, it
was not responsive to the question of whether Cawthon testified that he threatened or hit Price
“in the station.” No abuse of discretion is shown.
      Accordingly, we overrule Price’s ninth issue.
INEFFECTIVE ASSISTANCE OF COUNSEL
      Price contends in his tenth issue that trial counsel’s failure to object in the instances
identified in this opinion which have resulted in a failure to preserve error constitutes
ineffective assistance of counsel. However, the record is silent with regard to the reasons
counsel did not object on each of these occasions. Based on this record, we cannot conclude
that trial counsel’s performance fell below an objective standard of reasonableness. See
Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Accordingly, we overrule
Price’s tenth issue.
 

      We affirm the judgment.



                                                                   FELIPE REYNA
                                                                   Justice

Before Chief Justice Gray,
      Justice Vance, and 
      Justice Reyna



Affirmed
Opinion delivered and filed March 24, 2004
Do not publish
[CRPM]