

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00324-CR

_____

VICTOR ERIC MIRANDA, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR22-00026

_____

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Victor Eric Miranda appeals his conviction for indecency with a child by sexual contact. *See* Tex. Penal Code Ann. § 21.11(a)(1). Raising three points, Miranda contends that the trial court erred by (1) reading back testimony to the jury without first confirming that there was a dispute among its members regarding specific testimony, (2) allowing the State to amend the indictment to change the date that the alleged offense occurred, and (3) admitting certain extraneous-offense evidence pursuant to Article 38.37 of the Texas Code of Criminal Procedure. We will affirm.

## I. BACKGROUND

H.B. has three children, one of whom is N.R.M.,[1] the alleged victim in this case. Miranda previously had a romantic relationship with H.B. and is N.R.M.'s father. H.B. and Miranda broke up and permanently separated in October 2021. After the breakup, N.R.M. and her brother regularly stayed with Miranda under the terms of a custody agreement.

On November 11, 2021, while H.B. was getting ready for work, she told her children that she was going to take them to Miranda's house because her mom (the children's grandmother) was not available to watch them. The children became upset

---

[1]Because the victim was a minor at the time that the offense was committed, we refer to her and her family members—other than Miranda—by their initials. *See* Tex. R. App. P. 9.10(a)(3), (b).

and expressed that they did not want to go to Miranda's house. When H.B. asked why they did not want to go, N.R.M.—who was seven years old at the time—went into H.B.'s bedroom, shut the door, and told her that Miranda had touched her vagina and had "made her put her hand down his pants."

H.B. called the police, who began an investigation. As part of this investigation, N.R.M. underwent a forensic interview. During the forensic interview, N.R.M. made an outcry of abuse. N.R.M. told the forensic interviewer about an incident that occurred when she was alone with Miranda. She recounted that Miranda had asked her to get on top of him, had moved his hand up and down on her "no-no spot" over her clothing, had taken her hand and placed it on "his thing . . . that he uses . . . to pee," and had moved her hand up and down over his clothing.

Based on this outcry and the police investigation, Miranda was indicted for indecency with a child by sexual contact. Following a jury trial, he was convicted and sentenced to fifteen years in prison and a $500 fine. This appeal followed.

## II. DISCUSSION

As noted, Miranda raises three points on appeal. But for the reasons set forth below, none of these points provides a valid basis for reversing his conviction.

## A. ALLOWING THE READBACK OF TESTIMONY TO THE JURY UNDER ARTICLE 36.28

In his first point, Miranda contends that the trial court erred by allowing the readback of certain witness testimony to the jury even though there was purportedly no disagreement among the jurors as to that testimony. We disagree.

### 1. Applicable Law and Standard of Review

Article 36.28 of the Texas Code of Criminal Procedure provides that "if the jury disagree[s] as to the statement of any witness[,] they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other." Tex. Code Crim. Proc. Ann. art. 36.28. The Texas Court of Criminal Appeals has explained that the purpose of Article 36.28 is "to balance our concern that the trial court not comment on the evidence with the need to provide the jury with the means to resolve any factual disputes it may have." *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005) (citing *Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim. App. 1994)). If the jury asks the trial court to read back certain disputed testimony, the "court must first determine if the jury's inquiry is proper under Article 36.28." *Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994). "A simple request for testimony is not, by itself, a proper request under Article 36.28." *Balderas v. State*, 517 S.W.3d 756, 797–98 (Tex. Crim. App. 2016) (citing *DeGraff v. State*, 962 S.W.2d 596, 598 (Tex. Crim. App. 1998)).

4

We will not disturb a trial court's decision under Article 36.28 unless a clear abuse of discretion and harm are shown. *Thomas v. State*, 505 S.W.3d 916, 923 (Tex. Crim. App. 2016); *see Robison*, 888 S.W.2d at 481. "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action"; instead, the question is "whether the trial court acted without reference to any guiding rules or principles." *Randon v. State*, 107 S.W.3d 646, 648 (Tex. App.—Texarkana 2003, no pet.). The mere fact that a trial court might have decided a matter within its discretionary authority differently than the reviewing court would have does not mean that the trial court abused its discretion. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). Rather, a trial court only abuses its discretion if its ruling falls outside the "zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391.

### 2. Relevant Background

During its guilt–innocence deliberations, the jury sent a note requesting H.B.'s and N.R.M.'s testimony. The trial court responded that "the law does not permit a general rereading of the testimony of any witness" and instructed the jurors that "if [they] disagree as to . . . the testimony of any witness," they may apply to the court to have "only that part of the witness testimony on a particular point in dispute and no other" read to them from the court reporter's notes.

The next day, the jury sent another note stating that they wanted "the court reporter to read back the portion of [H.B.'s] testimony concerning [N.R.M.'s] telling

5

her why she did not want to go to [Miranda's home]." Given its instructions to the jurors after their first request, the trial court reasoned that they had narrowed the requested testimony to a specific point in dispute. Thus, the trial court granted the request and had the court reporter read the requested portions of H.B.'s testimony to the jury.

### 3. Analysis

Miranda argues that the trial court abused its discretion by allowing the court reporter to read back the requested portion of H.B.'s testimony because the jurors purportedly failed to identify a specific point of disagreement. But as Miranda recognizes, Article 36.28 does not require the jury to explicitly state the nature of their disagreement. *See Howell*, 175 S.W.3d at 793 ("The statute requires that the jury disagree; it does not require that the jury use any particular words to express that disagreement."); *Balderas v. State*, No. 06-22-00024-CR, 2023 WL 3638314, at *11 (Tex. App.—Texarkana May 25, 2023, pet. ref'd) (mem. op., not designated for publication) (pointing out that Article 36.28 "does not require the jury to state the nature of their disagreement in a specific manner" (citing *Howell*, 175 S.W.3d at 793)). And "[w]hile a simple request for testimony does not amount to a disagreement, . . . a trial court may, in its discretion, infer a dispute in a given case." *Balderas*, 2023 WL 3638314, at *11 (citing *Howell*, 175 S.W.3d at 793).

Here, the jurors sent one general request for H.B.'s and N.R.M.'s testimony and then, after being instructed that they could only have the court reporter read back

6

testimony pertaining to a particular point in dispute, specifically requested that the trial court have the court reporter read back the portion of H.B.'s testimony concerning why N.R.M. did not want to go to Miranda's home. Under these circumstances, we cannot conclude that the trial court abused its discretion by determining that a dispute existed regarding the portion of H.B.'s testimony requested in the second note. *See Robison*, 888 S.W.2d at 481 (concluding that trial court had not abused its discretion by reading back challenged testimony to the jury after the jury had made three separate requests, "each becoming increasingly narrow in scope," and the trial court had "clearly informed the jury that testimony would be read back only in the event of a dispute after each request for information"); *Randon*, 107 S.W.3d at 650 (concluding that trial court had not abused its discretion by reading back testimony to the jury when the jury had "first sent a general request that the testimony of two witnesses be read" and then, after being instructed "that it could not have the testimony read back unless [it] was in disagreement about the testimony," sent a second request for specific testimony from a specific witness).

We overrule Miranda's first point.

## B. ALLOWING THE STATE TO AMEND THE INDICTMENT

In his second point, Miranda contends that the trial court erred by allowing the State to amend the indictment to change the date of the alleged offense from "on or about November 11, 2021" to "on or about November 6, 2021." But Miranda forfeited this complaint.

Articles 1.14(b) and 28.10 of the Texas Code of Criminal Procedure govern amendments to indictments. *See* Tex. Code Crim. Proc. Ann. arts. 1.14(b), 28.10. Under Article 28.10(a), "[a]fter notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences"; provided, however, that upon the defendant's request, the trial court "shall allow the defendant not less than 10 days . . . to respond to the amended indictment or information." *Id.* art. 28.10(a). Further, Article 1.14(b) provides:

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

*Id.* art. 1.14(b).

In this case, the State filed a motion in July 2023 for leave to amend the indictment to change the date of the alleged offense. On August 10, 2023—more than seventy days before trial—the trial court signed an order granting the State's motion, and the amended indictment was filed the same day. Below the judge's signature, the order stated "Agreed:" and then set forth the signature block and signature of Miranda's attorney. Thus, the record reflects that Miranda assented to the indictment's amendment. *Cf. Estate of Nielsen*, No. 02-17-00251-CV, 2018 WL 4625531, at *6 (Tex. App.—Fort Worth Sept. 27, 2018, pet. denied) (mem. op.) (concluding that appellant had waived any error in order probating will and

8

partitioning and distributing assets because her attorney had signed the order under the word "AGREED:" and the order was entitled "Agreed Order").

Because Miranda failed to object—and actually affirmatively agreed—to the indictment's amendment before trial commenced,[2] he has forfeited his second point. *See id.*; *Smith v. State*, Nos. 04-16-00630-CR & 04-16-00631-CR, 2019 WL 938280, *2 (Tex. App.—San Antonio, Feb. 27, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant had waived appellate complaints about amendment to indictment because he had not objected to the amended indictment before trial commenced); *Tyson v. State*, 172 S.W.3d 172, 175 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that appellant had forfeited complaint about indictment's being amended on the day of trial because, rather than objecting, his trial counsel had affirmatively stated on the record that she had no objection to the amendment and that appellant waived the ten-day notice afforded to defendants upon request under Article 28.10).

Further, even if Miranda had preserved his complaint about the indictment's amendment, we would overrule it on the merits. According to Miranda, amending the indictment to change the date of the alleged offense from November 11, 2021, to November 6, 2021, prevented him from adequately preparing for trial and

---

[2]In his briefing, Miranda does not cite to anything in the record showing that he objected to the amended indictment. *See* Tex. R. App. P. 38.1(i). Nor has our independent review of the record revealed any such objection.

9

"eviscerated [his] opportunity to present a meaningful defense." But when—as here—an indictment alleges that an offense occurred "on or about" a certain date, the State is only required to prove that the defendant committed the offense "at some time prior to the filing of the indictment and within the limitations period." *Smith v. State*, 959 S.W.2d 1, 26 (Tex. App.—Waco 1998, pet. ref'd); *accord DeMoss v. State*, 12 S.W.3d 553, 560 (Tex. App.—San Antonio 1999, pet. ref'd). Thus, the original indictment put Miranda on notice to prepare for proof that the offense occurred at any time within the statutory limitations period—a timeframe that includes November 6, 2021. *See Thomas v. State*, 753 S.W.2d 688, 693 (Tex. Crim. App. 1988). Accordingly, the complained-of amendment did not prejudice Miranda's substantial rights. *See* Tex. Code Crim. Proc. Ann. art. 28.10(c).

We overrule Miranda's second point.

### C. ADMITTING EXTRANEOUS-OFFENSE EVIDENCE

In his third point, Miranda contends that the trial court abused its discretion by admitting certain extraneous-offense evidence pursuant to Article 38.37. We disagree.

### 1. Relevant Background

Before trial, the State notified Miranda of its intent to present the testimony of H.B.'s cousin C.J. and H.B.'s sister H.P. as extraneous-offense evidence under Article 38.37 of the Texas Code of Criminal Procedure.[3] *See id.* art. 38.37, § 2. Both

---

[3]As with N.R.M., we refer to these witnesses by their initials to protect their privacy. *See Garza v. State*, No. 09-23-00122-CR, 2025 WL 468674, at *6 n.3 (Tex.

witnesses alleged that Miranda had touched them inappropriately when they were under seventeen years of age. Miranda filed a motion to suppress in which he objected to C.J.'s and H.P.'s testimony on Rule 403 grounds. *See* Tex. R. Evid. 403. After holding a hearing outside the jury's presence and weighing the parties' arguments, the trial court sustained Miranda's objection to H.P.'s testimony[4] but ultimately allowed C.J. to testify during the trial's guilt–innocence phase.

## 2. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery*, 810 S.W.2d at 379. We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. As noted, an abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

---

App.—Beaumont Feb. 12, 2025, no pet.) (mem. op., not designated for publication) (citing Tex. Const. art. I, § 30(a)(1)).

[4]Although H.P. was not allowed to testify during the trial's guilt–innocence phase, she testified during the punishment phase.

### 3. Admissibility of Extraneous-Offense Evidence Under Article 38.37

Rule 404(b)(1) generally disallows evidence of crimes, wrongs, or other acts solely to prove a person's character to show that the person acted in conformity with that character on a particular occasion. Tex. R. Evid. 404(b)(1). Such extraneous-offense evidence is statutorily admissible, however, in continuous-abuse-of-a-young-child and indecency-with-a-child cases. *See* Tex. Code Crim. Proc. Ann. art. 38.37. In such cases, "[n]otwithstanding Rules 404 and 405," evidence that a defendant has committed a separate sexual offense against a different child may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* § 2(b). But before such evidence may be introduced, the trial judge must conduct a hearing outside the jury's presence to determine whether the evidence is adequate to support a jury finding that the defendant committed the separate offense beyond a reasonable doubt. *Id.* § 2-a.

### 4. Rule 403

Even if extraneous-offense evidence is relevant and admissible under Article 38.37, that evidence can be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.); *see also* Tex. R. Evid. 403. A trial court must conduct a Rule 403 analysis upon a proper objection or

request.  *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication)).  Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403— including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760.

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).  The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would

give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

### 5. Analysis

Applying the *Gigliobianco* factors, *see id.*, we cannot say that the trial court abused its discretion by admitting C.J.'s testimony.[5]

First, because C.J.'s testimony described an extraneous offense very similar to the charged offense[6] and showed Miranda's propensity to inappropriately touch underage girls, the inherent probative force of C.J.'s testimony is strong. *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (recognizing that "[b]ecause evidence of prior sexual abuse of children '[is] especially

---

[5]Miranda argues that the trial court abused its discretion not only by admitting C.J.'s testimony over his Rule 403 objection but also by failing to conduct a balancing test prior to admitting this evidence. But the record reflects that the trial court did, in fact, conduct a balancing test. At the conclusion of the pretrial hearing, the trial court discussed the probative value of C.J.'s testimony and then deferred making its final ruling until trial so that it could "take the time" to re-read the parties' briefs. Ultimately, the trial court admitted C.J.'s testimony "after weighing everything" and "reading the briefs," which addressed the *Gigliobianco* factors. Thus, while the trial court did not explicitly discuss the *Gigliobianco* factors at great length during the pretrial hearing, the record reflects that—contrary to Miranda's assertion—the trial court did conduct a Rule 403 balancing test before admitting C.J.'s testimony. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997) (clarifying that a trial court is not required to conduct a balancing test on the record and is presumed to have engaged in a balancing test once Rule 403 is invoked).

[6]Like N.R.M., C.J. testified that Miranda had touched and rubbed her vagina over her clothing.

14

probative of [a defendant's] propensity to sexually assault children,' the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children" (quoting *Belcher*, 474 S.W.3d at 848)); *see also Hill v. State*, No. 11-13-00069-CR, 2015 WL 252316, at *7 (Tex. App.—Eastland Jan. 15, 2015, pet. ref'd) (mem. op., not designated for publication) (recognizing that one of the "important measures of probative force" is "the presence of similarities between the charged and the extraneous offense" (first citing *Montgomery*, 810 S.W.2d at 390; and then citing *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985)))). Second, because there was no physical evidence and N.R.M.'s credibility was at issue, the State had a strong need for the extraneous-offense evidence to bolster N.R.M.'s credibility and rebut the defense's theory that N.R.M.'s story was fabricated. *See Foster v. State*, No. 02-22-00109-CR, 2023 WL 4780566, at *4 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op., not designated for publication); *cf. Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *5 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (holding that the State had a "strong need" for extraneous-offense evidence in domestic-assault case because it rebutted the defense's theory "that the abuse was mutual and just part of the couple's sexual foreplay or their usual, 'toxic' dynamic"). Thus, considering the first two *Gigliobianco* factors, we conclude that the extraneous-offense evidence's probative value is very high. *See Gigliobianco*, 210 S.W.3d at 641–42.

Turning to the remaining *Gigliobianco* factors, we conclude that Miranda has failed to show that the extraneous-offense evidence's high probative value was substantially outweighed by any of the dangers listed in Rule 403. *See James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760. First, because the extraneous offense alleged by C.J. is similar in nature and seriousness to the charged offense, her testimony is not unfairly prejudicial. *See Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice."); *see also Gigliobianco*, 210 S.W.3d at 641 (clarifying that unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one"). And because the evidence is not scientific or technical in nature, there is little risk that the jury would confuse the issues or give the evidence undue weight. *See Gigliobianco*, 210 S.W.3d at 641 (providing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force"). Further, because C.J.'s testimony consumed only approximately thirteen of the nearly three hundred pages of the reporter's record comprising the two-day guilt–innocence phase of Miranda's trial, it did not consume an inordinate amount of time. *See Deggs v. State*, 646 S.W.3d 916, 927 (Tex. App.—Waco 2022, pet. ref'd) (holding that extraneous-offense evidence that comprised "approximately ten pages of the

16

over-[two hundred fifty] pages of the reporter's record" did not consume an inordinate amount of time at trial); *Robisheaux v. State*, 483 S.W.3d 205, 221 (Tex. App.—Austin 2016, pet. ref'd) (holding that extraneous-offense evidence did not consume an inordinate amount of time when it took up eight pages of the reporter's record that was "hundreds of pages long").

Thus, we cannot conclude that any of the dangers listed in Rule 403—including unfair prejudice—substantially outweighed C.J.'s testimony's high probative value, *see Gigliobianco*, 210 S.W.3d at 642, much less that the trial court's decision to admit her testimony was outside the zone of reasonable disagreement, *see Zuliani*, 97 S.W.3d at 595. Accordingly, we overrule Miranda's third point.

## III. CONCLUSION

Having overruled all of Miranda's points, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 26, 2025