**Samuel Heath COCHRAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–02–00053–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 3, 2003.

Decided April 18, 2003.

Cary Crump, Henderson, for appellant.

G. Kyle Freeman, County & Dist. Atty., Bill Saban, Asst. County Atty., Henderson, for appellee.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

OPINION

Opinion by Justice WILLIAM J. CORNELIUS (Retired).

In a jury trial, Samuel Heath Cochran was convicted of attempted manufacture of methamphetamine. Cochran elected to have the trial court set his punishment. His punishment, enhanced by a prior felony conviction, was set by the trial court at twenty years' confinement.

On appeal, Cochran contends that the State did not give him proper or adequate notice of the prior felony conviction it intended to use as enhancement; there is legally and factually insufficient evidence to support the judgment of conviction; the trial court erroneously admitted certain evidence; and he received ineffective assistance of counsel at trial. We overrule all of these contentions and affirm the judgment.

■ Cochran first contends the State failed to give him proper or adequate notice that it intended to rely on the prior felony conviction to enhance his punish-

ment if he was convicted. The State did not allege the enhancement conviction in the indictment; instead, the prosecutor sent a letter to Cochran's counsel on September 25, 2001, and filed a copy of the letter with the district clerk on October 1, 2001. The letter reads as follows:

You are hereby given notice that the State intends to plead and prove, at the appropriate time, that Samuel Heath Cochran has been once before convicted of a felony, Burglary of a Habitation, 1st Degree Felony, on September 30, 1993, in CR93–171, in the 4th Judicial District Court where the original sentence of 10 years was suspended and he was placed on 10 years probation, which was revoked August 28, 1994, and he was sentenced to 5 years ID/TDCJ. Proof of same will increase the possible punishment to that of a 2nd degree offense.

The Texas Court of Criminal Appeals has held that prior convictions used as enhancements must be pleaded in some form, but not necessarily in the indictment. *Brooks v. State*, 957 S.W.2d 30, 33 (Tex. Crim.App.1997). In *Throneberry v. State*, 72 S.W.3d 389, 395 (Tex.App.-Fort Worth 2002, pet. dism'd, untimely filed), the Fort Worth Court of Appeals held that a letter mailed to defense counsel and later introduced in evidence at the trial did not constitute a "pleading" of the enhancement.

We conclude that the letter sent by the prosecutor to defense counsel here does not constitute a pleading of the enhancement allegation. However, like the Fort Worth Court of Appeals in *Throneberry*, we also find that the error in this regard is harmless. Cochran's counsel admittedly received the prosecutor's letter; the letter was received twenty-two days before the trial began and was filed with the district clerk seventeen days before the trial began; Cochran testified at both the guilt/in-

---

* William J. Cornelius, C.J., Retired, Sitting by Assignment.

nocence and the punishment stages of the trial and freely admitted his prior conviction; neither Cochran nor his counsel contended they were in any way surprised by the failure to allege the prior felony in a pleading; and Cochran has demonstrated no harm that he suffered as a result of the notice being given in a letter rather than in a pleading.

The failure to plead the enhancement allegation creates a variance between the pleading and the proof. There is no charge error, because the issue of punishment was submitted to the trial court instead of the jury. For Cochran to secure a reversal for this variance, he must show that the variance was material, i.e., one that prejudiced his substantial rights. *Gollihar v. State,* 46 S.W.3d 243, 248, 258 (Tex.Crim.App.2001). As noted earlier, Cochran was not misled or prejudiced in any way by the State's alleging the enhancement conviction in a letter instead of a pleading, so the variance is not material.

▇▇▇ In his second point, Cochran contends the evidence is legally and factually insufficient to support the judgment of conviction. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App.1999). In reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light to determine if the jury's finding is so against the great weight of the evidence as to be manifestly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

On May 23, 2001, Officer Blaine Shavers and other officers working with the North-

east Texas Narcotics Task Force executed a search warrant at certain property adjacent to County Road 491 in Rusk County. The property was a small parcel of land owned by Cochran and on which was located a mobile home and a blue sleeper van parked in the yard near the mobile home. Officers executed the search warrant at night. They found James Dyke and Kristy Simpson in the van. Dyke and Simpson had been staying in the van with Cochran's permission. No one was in the mobile home when the search was executed. The mobile home was furnished and supplied with utilities that were turned on, furniture, bedding, and food sufficient for contemporary living. There was a pit bulldog in the mobile home when the officers entered. The officers found in the mobile home a substantial amount of items, materials, empty containers of pseudo-ephedrine tablets, and various instruments commonly used to help manufacture methamphetamine, and to smoke methamphetamine and other drugs.

Cochran was not at the mobile home or the van when the search began. During the search, however, officers saw Cochran approach the properties on County Road 491, slow down, start to turn into the driveway, and then suddenly turn away from the entrance, turn back on County Road 491, and drive away. An officer followed Cochran and stopped him about three-fourths of a mile away. The officer arrested him and brought him back to the mobile home.

Cochran and his common-law wife, Tallitha Matlock, were indicted for attempted manufacture of methamphetamine. Dyke and Simpson were also indicted for similar offenses. Dyke and Simpson later pleaded guilty, and Dyke testified at Cochran's trial and admitted that he and Simpson were manufacturing methamphetamine in the blue van. Dyke denied, however, that

Cochran helped him manufacture methamphetamine.

The State contends that Cochran admitted in his testimony at the punishment stage of the trial that he participated with Dyke and Simpson in attempts to manufacture methamphetamine, and that Cochran therefore is estopped from contending on appeal that the evidence is insufficient to convict him. The State bases its contention on the "*DeGarmo* doctrine," which provides that, when a defendant testifies at the punishment stage that he committed the offense charged against him, he has, for all legal purposes, entered the equivalent of a guilty plea and has waived any challenge to the sufficiency of the evidence. *DeGarmo v. State,* 691 S.W.2d 657 (Tex.Crim.App.1985).

At the punishment stage, on cross-examination by the prosecutor, Cochran testified as follows:

A. ... [T]he only way I was involved in any of that was providing precursor, and that was a trade that I would make with them people for the product.

Q. You would trade precursor for a product, precursor actually being the— what would be soaked out of the cold tablets?

A. I guess. I don't know how they do what they do.

Q. But you knew that you were going to get some of the product, the final product, the methamphetamine—

A. No, sir.

Q. —in exchange?

A. No, sir, I was traded up-front in person, right off the bat, product.

Q. Okay. You got some methamphetamine for some more Ephedrine tablets, cold tablets?

A. More, I don't know.

Q. Excuse me. You got some methamphetamine for cold tablets that you traded; is that what you're saying?

A. Yes, sir.

The Texas Court of Criminal Appeals has modified its holding in *DeGarmo v. State.* In *Leday v. State,* 983 S.W.2d 713 (Tex.Crim.App.1998), the court held that a defendant's admission of guilt at the punishment phase cannot be a waiver of the violation of those guarantees of our judicial system that are "fundamental to our quality of life ... and at times override the truth-finding function." The court mentioned proof beyond a reasonable doubt as one of those fundamental guarantees. Thus, although the *Leday* opinion did not involve a challenge to the sufficiency of the evidence, as ours does, but rather involved a challenge to the admissibility of evidence seized in an allegedly unconstitutional search, the case has at least cast doubt on the continued viability of the *DeGarmo* rule as it relates to sufficiency of the evidence challenges.

We need not rely on a *DeGarmo* waiver or estoppel in this case, however, because we find legally and factually sufficient evidence, apart from Cochran's admission at the punishment stage, to support Cochran's conviction as a party to the offense of attempting to manufacture methamphetamine.

The mobile home and the blue van where the methamphetamine laboratory supplies and equipment were found were both located on land owned by Cochran. Cochran gave Dyke and Simpson permission to stay in the van. There is ample evidence that Cochran and Matlock were living in the mobile home. Cochran testified that they had lived there off and on for some time. He gave police the address of the mobile home as his address when he was "booked" for the offense. The mobile home appeared to be currently lived in,

had all utilities turned on, had food in the refrigerator, and there was a pet dog in the home when the officers entered.

In the search of the mobile home, the officers found the following: twelve or thirteen "blister packs" that had contained pseudo-ephedrine tablets; a set of brass scales; a light bulb that had been modified to use to smoke methamphetamine; numerous pieces of tinfoil, like those used for smoking methamphetamine; a small quantity of marihuana and marihuana seeds; tubes with burned ends; a charred pen barrel; a plastic container with screens; an antler pipe and a ceramic cow skull, described as drug paraphernalia; a brass valve or coupling with burned residue; and a small set of hemostats. State's witnesses testified that all of these items were either commonly used in the manufacture of methamphetamine or in using methamphetamine or other illegal drugs.

In the yard, the officers found a propane tank with a green substance on the valve, indicating it had contained anhydrous ammonia, which can be used in the manufacture of methamphetamine; several containers; a jug of muriatic acid, used in the manufacture of methamphetamine; a five-gallon bucket; a funnel; and a Coleman camp fuel can. Witnesses testified that all these items can be used in the manufacture of methamphetamine.

In the blue van, the officers found a stenographic pad listing ingredients and the steps necessary to manufacture methamphetamine; a coffee filter with pseudo-ephedrine on it; a blender that contained pseudo-ephedrine; a pack of ephedrine; a spatula; a butane-propane fuel container and other containers; coffee filters but no coffee pot; an electric hot plate; a bottle of denatured alcohol; and assorted glassware. Witnesses testified that all these items were associated with the manufacture of methamphetamine.

Narcotics officers testified they listened over their radio to a live encounter between a confidential informant and Cochran and a female that occurred at Cochran's mobile home when the narcotics task force was gathering evidence to justify a search warrant. The officers heard the conversation in which the confidential informant spoke to Cochran. The officers could identify the voices because Cochran identified himself in the conversation. In the conversation, Cochran told the informant that he was going to make some methamphetamine in the future, but needed some key ingredients. Cochran asked the informant to bring him some 2,000 pseudo-ephedrine tablets, and the informant agreed to do so. The conversation was recorded and introduced in evidence and heard by the jury at the trial, but was of poor quality and difficult to understand.

The officers, however, had no difficulty hearing and relating the conversation in full because they heard it clearly over their radio, not from the tape. This testimony by the officers of what they heard Cochran say was admissible in evidence against him. *See* Tex.R. Evid. 801(e)(2); *Bingham v. State*, 987 S.W.2d 54, 56 n. 2 (Tex.Crim. App.1999); *Shiflet v. State*, 732 S.W.2d 622 (Tex.Crim.App.1985); *Young v. State*, 10 S.W.3d 705 (Tex.App.-Texarkana 1999, pet. ref'd); *Collins v. State*, 969 S.W.2d 114, 117 (Tex.App.-Texarkana 1998, pet. ref'd).

Cochran readily admitted using methamphetamine and marihuana, and officers testified that, when he was arrested, he had a quantity of methamphetamine in his shirt pocket. In his testimony at the guilt/innocence stage of the trial, Cochran testified that he knew nothing about methamphetamine being manufactured on his property and that he only used methamphetamine and marihuana for his personal use.

We find legally and factually sufficient circumstantial evidence to prove that Cochran participated, at least as a party, in the attempted manufacture of methamphetamine. A person is guilty as a party to an offense if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid another person to commit the offense. TEX. PEN.CODE ANN. § 7.02 (Vernon 2003). The jury was charged on the law of parties in this case.

■ In his third point, Cochran contends the trial court erred in allowing the State to introduce certain extraneous evidence. The evidence he complains about is (1) a photograph of himself when he was booked at the police station; (2) marihuana found in the mobile home during the search; (3) miscellaneous drug paraphernalia found in the mobile home; and (4) a quantity of methamphetamine found on Cochran's person when he was arrested.

Cochran argues that these items constitute evidence of extraneous offenses or acts not relevant to the charge against him, because at most, they are evidence of his using drugs, not of attempting to manufacture methamphetamine.

The photograph of Cochran when he was booked at the police station was admissible. A verbal description of Cochran when he was arrested would have been admissible, and a photographic representation was also admissible. *Laws v. State*, 549 S.W.2d 738 (Tex.Crim.App.1977); *Davis v. State*, 504 S.W.2d 908, 910 (Tex. Crim.App.1974); *see also Denny v. State*, 473 S.W.2d 503 (Tex.Crim.App.1971).

■ The methamphetamine found on Cochran when he was arrested was admissible as same transaction contextual evidence and to show the context of the arrest. *Rogers v. State*, 85 S.W.3d 359, 361 (Tex.App.-Texarkana 2002, no pet.).

Moreover, Cochran waived any complaint in this regard when he took the stand at the guilt/innocence stage of the trial and, on examination by his own attorney, admitted that he used methamphetamine. *Stoker v. State*, 788 S.W.2d 1, 12 (Tex. Crim.App.1989).

■ The drugs and drug paraphernalia found in the mobile home, other than the materials and equipment suitable for use in the manufacture of methamphetamine, were admissible as circumstantial evidence to corroborate Cochran's admissions in his conversations with the informant that he was going to make some methamphetamine. Moreover, evidence of a person's possession or use of one kind of drug may be relevant to link him to other drug offenses. *United States v. Williams*, 957 F.2d 1238 (5th Cir.1992); *Jones v. State*, 427 S.W.2d 616, 620 (Tex.Crim.App. 1968); *Stroman v. State*, 69 S.W.3d 325 (Tex.App.-Texarkana 2002, pet. ref'd); *Castaldo v. State*, 32 S.W.3d 413, 425 (Tex. App.-Waco 2000), *rev'd & remanded on other grounds*, 78 S.W.3d 345 (Tex.Crim. App.2002). And finally, the items in the mobile home that were commonly used in the manufacture of methamphetamine were admissible as circumstantial evidence to show Cochran's intent and preparation to manufacture methamphetamine. TEX.R. EVID. 404(b).

■ In his last point, Cochran contends he was denied effective assistance of counsel. To prevail on an ineffective assistance of counsel claim, Cochran must show that his counsel's representation fell below an objective standard of reasonableness and that his counsel's deficient performance prejudiced his defense to the extent that, if his counsel's representation had not been deficient, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App.1986).

Cochran bases his contention of ineffective assistance on his charges that his counsel (1) failed to consult him as to whether he wanted to submit the issue of punishment to the jury or to the trial court; (2) failed to call witnesses at the punishment stage; and (3) failed to argue to the trial court at the punishment stage that Cochran should be placed on community supervision.

As to the first contention, there is nothing in the record to indicate that Cochran's counsel failed to consult him on the issue of whether to submit the punishment issue to the jury or to the trial court.

There is also no evidence in the record showing whether there were any witnesses who could give testimony at the punishment stage that would be relevant or favorable to Cochran.

■ There is also a complete absence of evidence as to counsel's strategy in failing to argue to the court for community supervision. In the absence of some evidence of counsel's trial strategy, we must assume that his actions were justified by sound trial strategy. *Garcia v. State,* 57 S.W.3d 436 (Tex.Crim.App.2001). Overall, defense counsel presented a well-based and persuasive defense. He cross-examined the State's witnesses thoroughly and effectively, and generally presented an effective defense. If counsel's decision not to argue for community supervision was not reasonable, it was an isolated instance, and we conclude that it was not such as to constitute ineffective assistance, considering the totality of the circumstances.

For the reasons stated, we affirm the judgment.