In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00168-CR
______________________________


ROBERT EARL MAY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30211-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Robert Earl May, a gymnastics coach, appeals from his convictions for two offenses. 
In this case, he was convicted of aggravated sexual assault on a child under the age of
fourteen. In a companion case, tried at the same time as this case, and which is also on
appeal under cause number 06-03-00169-CR, he was convicted for indecency with a child,
enhanced to a first degree felony. The court assessed punishment at life imprisonment
in each case and ordered the sentences to run consecutively.
          May contends the evidence is legally and factually insufficient to support his
conviction. He also contends that the court erred by having an incorrect part of the
testimony read to the jury during its deliberations and that there was no defined dispute
among the jurors which justified any reading of testimony to the jury. May further contends
the court erred by not suppressing his statement made to the police, by allowing the State
to enhance punishment, by refusing to provide him with the victim's school records, and
by improperly admitting two segments of testimony. We overrule these contentions and
affirm the judgment.
Legal and Factual Sufficiency
          In reviewing the legal sufficiency of the evidence, we view the relevant evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the
evidence, we are required to determine whether, considering all the evidence in a neutral
light, the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v.
State, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21,
2004). There are two ways in which we may find the evidence to be factually insufficient. 
First, if the evidence supporting the verdict, considered alone, is too weak to support the
jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, if—when we weigh the evidence supporting and contravening the
conviction—we conclude that the contrary evidence is strong enough that the state could
not have met its burden of proof, we must find the evidence insufficient. Id. "Stated
another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is
factually insufficient, then we must reverse the judgment and remand for a new trial. 
Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). 
          In this case, the victim, B.B., testified she had awakened to find May pulling down
her pants and putting his tongue on and in her vagina. She testified that she made him
stop and that he asked her not to tell and said he would never do it again. That testimony,
standing alone, is legally sufficient evidence to support the verdict.



          In analyzing the evidence for factual sufficiency, however, we look at all of the
evidence. There is evidence from the victim as set out above. She also testified May gave
her several gifts, including a small television and a VCR, and had written a number of
letters to her. He also made her the payable on death (P.O.D.) beneficiary of a certificate
of deposit (CD) for $1,000.00. May's gift giving, however, was not restricted to B.B. There
is testimony he gave small gifts and money to a number of his students. The sums of
money he gave the other students, however, were much smaller than the $1,000.00 CD
for which he made B.B. the P.O.D. beneficiary. The evidence further shows that May also
wrote letters to many of his other students similar to the ones he sent B.B. Samples of the
letters are in the record, and they are either holiday notes or notes encouraging the
students to practice their gymnastics. 
          The evidence also shows that May, a retiree, provided B.B. and others with
gymnastics lessons free of cost. May's own apartment was his gymnastics studio, and he
provided the leotards the girls wore during lessons. He laundered the leotards himself and
kept them at his apartment/studio. B.B. testified May preferred the girls not wear any
undergarments during the lessons. H.M., the victim in the companion case, testified May
never told them they could not wear anything under their leotards. 
          B.B. said she did not immediately tell anyone about May molesting her because she
was afraid he would hurt her. She later admitted, however, that May had never threatened
or harmed her. 
 
          H.M., age fourteen at the time of trial, also took gymnastics lessons from May. She
and B.B. were best friends. H.M. testified that, on one occasion when she and B.B. were
at May's apartment, May touched her on the breast, and she further testified that he also
tried to touch her "private," but she pushed his hand away. She also testified May reached
for her buttocks. 
          Carol Baird, B.B.'s grandmother and with whom B.B. lived, testified that, after
learning of May's molestation of B.B. and H.M., the three of them went to the home of her
niece, Denise Alderete. Alderete has two daughters who also took gymnastics lessons
from May. Baird asked A.A., one of Alderete's daughters, if she had been molested by
May. She answered that she had not. 
          Seth Vanover, a police detective, testified he interviewed May on two occasions. 
Although May denied the allegations made against him, when confronted with the specific
allegation made by B.B., Vanover quoted May as saying, "Well, the only time I can think
she may have -- something like this could have happened is when she was pretending to
be asleep on my bed, and I leaned down to give her a kiss on her lips, because I told her
she needed to be kissed so she could wake up." Concerning inappropriate touching of
his students, May told Vanover that, because he was a gymnastics instructor, he "would
always accidentally touch them somewhere," but that he was careful about how he touched
girls. He also told Vanover that, if Vanover thought he (May) had a problem, he would get
treatment for his problem with little girls.


 
          Alderete's fourteen-year-old daughter, A.A., testified that B.B. told her May had only
touched her on her bottom with a noodle (a swimming toy) while playing a game, that she
was the only one anything ever happened to, and that nothing had happened to H.M. A.A.
further testified that B.B. told her May had not engaged in oral sex with her and that she
made up the story to get money for herself and her boyfriend. A.A. also testified that H.M.
had admitted that her story was not true and that she wanted to come forward and say so,
but was afraid she would get in trouble and lose her friendship with B.B. 
          A.A. further testified she was present when Baird, B.B., and H.M. came to her
mother's house and talked to them on the front porch about what May had done. A.A.
described the actions of B.B. and H.M. on this occasion as follows:
They were laughing, turning cartwheels, doing flip-flops in the front yard, and
they, I mean, they were just like smiling. And when they were telling us what
had -- what was going on, [B.B.] would be saying something or [H.M.] would
be saying something and [B.B.] would say, "huh-uh (negative), that isn't how
to say it," and like elbow her. And she'd be like, "Do you remember this?"
and [H.M.'s] like, "No." And she'd elbow her, and she was like, "Oh, yeah. 
Oh, yeah." And they would go off to the side and start saying some more
things, you know. And we were just like, so what happened? What
happened? And one was saying one story and the other was saying a
different one. 

          Alderete confirmed A.A.'s story about the porch discussion and the actions of B.B.
and H.M. on that occasion. 
          B.B. denied telling A.A. that the allegations had never occurred or that she made
up the story because she wanted money from May. She also denied that she and H.M.
had told A.A. and Alderete about the allegations in a laughing manner or that she told H.M.
what to say. H.M. also denied that she and B.B. were laughing or giggling when they told
Alderete and A.A. about what had happened to them, and denied that B.B. told her what
to say. She also denied telling A.A. that May never touched her inappropriately. Baird also
denied A.A.'s version of the girls' actions on this occasion and testified B.B. was crying and
upset. 
          Because the jury is the judge of the facts, and the appellate court's role is to review
criminal convictions, the appellate court is not allowed to "find" facts or substitute its
judgment for that of the jury. Zuniga, 2004 Tex. Crim. App. LEXIS 668, at *11. Although
the evidence is conflicting, when we consider all the evidence in a neutral light, we
conclude that the contrary evidence is not strong enough to require us to find that the jury
could not have reasonably concluded the State proved its case beyond a reasonable
doubt. See id. at *20. The contention of error is overruled.
Reading of the Testimony to the Jury
          May next contends the trial court improperly read a portion of the testimony back to
the jury. He contends the request for the testimony of "Seth" (Vanover) about "the Kiss or
(unintelligible) Mayes [sic] needing help about little girls" was inadequate to show a
disagreement that would allow the testimony to be read, and further argues that the wrong
portion of the record was read to the jury. 
          First, the jury must indicate clearly that it disagrees about the content of the
testimony, and the court is to have read only that part of the witness testimony or point that
is in dispute, and no other. Tex. Code Crim. Proc. Ann. art. 36.28 (Vernon 1981). In
determining what testimony is to be read, the court is to interpret the jury's communication,
decide what sections of testimony will best answer the inquiry, and limit the reading
accordingly. Brown v. State, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994). 
          When reviewing a claim of error in this context, we are to look to see whether the
trial court abused its discretion in determining what sections of the testimony will best
answer a request for reading of testimony. Iness v. State, 606 S.W.2d 306, 314 (Tex.
Crim. App. 1980). We are not to disturb that decision unless a clear abuse of discretion
and harm has been shown. Brown, 870 S.W.2d at 55; see Jones v. State, 706 S.W.2d
664, 668 (Tex. Crim. App. 1986). The trial court abuses its discretion when it allows
portions of testimony not related to the jury's inquiry to be read. Iness, 606 S.W.2d at 314,
citing Pugh v. State, 376 S.W.2d 760 (Tex. Crim. App. 1964).
          The jury's request does not suggest there was any disagreement about the
testimony. It is at most a request to hear the testimony again. The trial court presumed
there was a dispute because it had earlier told the jury it could only hear testimony if there
was a dispute and the jury then asked for testimony.
          This Court has recently addressed such a situation. In Randon v. State, 107
S.W.3d 646, 650 (Tex. App.—Texarkana 2003, no pet.), we recognized the opinions
holding that a court could reasonably look at successive notes that became more narrowly
tailored, combined with recitations by the trial court informing the jury it could only obtain
the testimony if there was a dispute about particular testimony, as adequately meeting the
requirements of Article 36.28.
          In this case, the jury's first note asks for "Seth's testimony." That request was
denied, and the jury was instructed that a dispute about specific testimony must exist
before testimony could be read. The next note specified that the jury wanted testimony
about the defense asking Seth about the kiss. In that context, as in Randon, we find it
reasonable for the trial court to infer a disagreement among the jury members regarding
the detective's testimony, because the jury's subsequent request was narrower than its first
request and was made after the trial court had instructed the jury it could not read back
testimony unless the jury had a disagreement. See Robison v. State, 888 S.W.2d 473,
481 (Tex. Crim. App. 1994). Accordingly, we cannot say the trial court abused its
discretion in deciding to read the testimony.
          However, we are still confronted with the extent of the testimony read. The jury
specifically asked for the defense's questions on the topic. The court read back the State's
questions and the detective's answers before moving to the defense's questions and the
answers. This is obvious error. It was not, however, preserved for our review. Complaints
about error in the reading of trial testimony must be preserved by objection at the time of
the reading. Hollins v. State, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991); Randon, 107
S.W.3d at 649. There was no timely objection; thus, we may not address this issue on its
merits. The contention is overruled.
Suppression of Statement
          May next contends the court erred by not suppressing his statement because it was
not given voluntarily. Article 38.22 of the Code of Criminal Procedure and Miranda apply
only to statements made as the result of custodial interrogation. See Tex. Code Crim.
Proc. Ann. art. 38.22, § 5 (Vernon Supp. 2004); Miranda v. Arizona, 384 U.S. 436 (1966). 
Whether a person is in custody is an objective determination based on all the
circumstances. See Dowthitt v. State, 931 S.W.2d 244, 254–55 (Tex. Crim. App. 1996). 
A person is in custody only if, under all the circumstances, a reasonable, innocent person
would believe that the person's freedom of movement was restrained to the degree
associated with an arrest. See id. at 255.
          The evidence shows that May went voluntarily to the police station and that he was
permitted to leave after both the first and second interviews. The evidence shows that he
was not physically restrained. There is testimony that the interrogator shouted at him,
made accusations against him beyond anything suggested by the victim, told him he would
never see his grandchildren again, and that the interrogator at least touched May's hand
during the interview. This does not, however, necessarily show that May was in custody
at the time he submitted to the interrogation. Under an abuse of discretion standard, we
conclude the trial court had sufficient evidence before it to allow it to determine May was
not in custody. 
          Even in the absence of custody, however, due process may be violated by admitting
confessions that are not voluntarily given. Wolfe v. State, 917 S.W.2d 270, 282 (Tex. Crim.
App. 1996). A statement is not voluntary if there was "official, coercive conduct of such a
nature that any statement obtained thereby was unlikely to have been the product of an
essentially free and unconstrained choice by its maker." Alvarado v. State, 912 S.W.2d
199, 211 (Tex. Crim. App. 1995). If raised by the defendant, the state bears the burden
of proving by a preponderance of the evidence that the statement was given voluntarily. 
Id. The trial court is the sole judge of the weight and credibility of the evidence, and the
trial court's finding on voluntariness may not be disturbed on appeal absent an abuse of
discretion. Id.; Martinez v. State, 131 S.W.3d 22 (Tex. App.—San Antonio 2003, no pet.). 

          In this case, there was evidence from which the court could determine May was not
coerced into making the statement. No abuse of discretion has therefore been shown. 
The contention of error is overruled.
Enhancement of Punishment
          May next contends the trial court erred by allowing the State to enhance
punishment. He argues that adequate and proper notice was not given of the intent to
enhance. The record shows, however, that notice was given by a "STATE'S NOTICE OF
INTENT TO SEEK ENHANCED PUNISHMENT DUE TO PRIOR FELONY
CONVICTIONS." As recently acknowledged by this Court, the Texas Court of Criminal
Appeals has held that prior convictions used as enhancements must be pled in some form,
but not necessarily in the indictment. Brooks v. State, 957 S.W.2d 30, 33 (Tex. Crim. App.
1997); Cochran v. State, 107 S.W.3d 96, 98 (Tex. App.—Texarkana 2003, no pet.) (finding
a letter inadequate to meet requirements). 
          In this case, the document is a pleading. That is sufficient to meet the requirements
of Brooks. The contention of error is overruled.
Disclosure of Victim's School Records
          May next contends the trial court erred by refusing to allow him to discover B.B.'s
school records pursuant to his subpoena duces tecum. Counsel sought those records,
arguing they might allow him to impeach the victim or locate witnesses who could testify
about her reputation for truthfulness. The court reviewed the records in camera under a
motion to quash filed by the school and the State, and determined they should not be
turned over to counsel. The records have been provided to this Court for review. Counsel
has made no specific argument concerning harm, which is entirely reasonable given that
he has not been allowed to examine the documents involved.
          The school cited the court to 20 U.S.C.A. § 1232g(b)(2)(A), (B) (West 2000) as
reason to quash.


 That statute provides that the federal government shall not make funds
available to any school that releases a student's records without a parent's consent or
pursuant to a lawfully issued subpoena. The denial of a proper discovery request, either
during or before trial, may violate a defendant's due process rights. Thomas v. State, 837
S.W.2d 106, 111–12 (Tex. Crim. App. 1992); Valdez v. State, 116 S.W.3d 94, 99 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref'd); Ealoms v. State, 983 S.W.2d 853, 860 (Tex.
App.—Waco 1998, pet. ref'd). 
          Discovery requests by defendants in criminal cases are an area of the law that is
deserving of attention. The rules and statutes address to some extent requests for
discovery by a defendant from the state, or requests for subpoenas of documents from a
witness. See Tex. Code Crim. Proc. Ann. art. 42.01, et seq. (Vernon 1979 & Supp. 2004). 
They do not cover this situation, where defense counsel seeks documents not from the
State, but from a public school. Counsel states that his purpose in seeking B.B.'s
disciplinary records was to determine whether he could obtain information that would then
direct him to individuals in the school who could speak with knowledge about B.B.'s
reputation as a truthful or untruthful person. See Tex. R. Evid. 404, 405 (methods of
proving character), 607, 608 (impeachment by evidence of character). 
          The rules do not address this matter. In Cooks v. State, 844 S.W.2d 697, 736 (Tex.
Crim. App. 1992), the court addressed an issue where a defendant complained he could
not effectively cross-examine his teacher's reputation testimony because he did not have
certain school records. The court did not hold that such records were unavailable, instead
focusing on the lack of any showing of harm resulting from the unavailability of those
records. 
          In cases from other jurisdictions, an Arizona court of appeals in State v. Birdsall, 568
P.2d 1094 (Ariz. Ct. App. 1977), reviewed a general criminal rule specifically allowing
discovery in criminal cases, noting that school disciplinary records would definitely be
relevant and material where the issue was the reputation for aggressiveness and
belligerence of the victim, and found no abuse of discretion in allowing disclosure. 
Similarly, an Illinois court of appeals in People v. Monk, 528 N.E.2d 1063, 1068 (Ill. App.
Ct. 1988), discussed the method to be used when a school authority refused to produce
school files. In that case, the defendant was also seeking to use the files for cross-examination, in connection with an attempt to ascertain a teacher's reasoning about the
credibility of the victim. That court used essentially the same procedure utilized in this
case: an in camera inspection by the trial court with an ensuing determination of whether
the documents were relevant and material. 
          In Zaal v. State, 602 A.2d 1247 (Md. 1992), the court made a detailed analysis of
the privacy and confidentiality considerations involved in the release of school records in
the context of an allegation of sexual child abuse by a grandfather on his granddaughter. 
The court recognized that the issue, quite clearly, was one of credibility of the witness and
that the need was to determine whether the documents would be admissible, either
directly, or usable for impeachment purposes, or that which would lead to such evidence. 
That court agreed some type of in camera inspection would be appropriate and directed
the trial court to utilize a modified form of in camera inspection with the option of allowing
controlled access by counsel to the records so that the sides could act as advocates for
their respective positions in determining the admissibility of the portions of the record found
to be relevant. Id. at 1264. 
          We conclude that the in camera inspection performed by the trial court is a
procedure adequate to protect the defendant's rights and ability to fairly present his or her
case. Further, we have reviewed the documents. They generally reflect mild to violent
misbehavior by B.B., as shown by several removals from the general school populace and
from school transportation. We cannot say, however, that there is anything in those
documents that could be used for impeachment or that shows B.B.'s reputation for
truthfulness or untruthfulness. We, therefore, conclude no error has been shown in
declining to order the documents produced. The contention of error is overruled.
Prejudicial Extraneous Testimony
          May next contends the trial court erred by allowing Baird to introduce prejudicial
extraneous matters before the jury over his objection. The complained-of testimony is
included in the following context:
QWhere did he [May] come to talk to you?
AAt my place of employment.
QOkay. Go ahead, please.
AAnd he had told me that it never happened, and he had told me
that previously he had --
 
[Defense Counsel]: Your Honor, may we approach the bench? 

Although it is possible the witness was about to go into inappropriate matters, she did not
do so before defense counsel intervened. The testimony actually given does not implicate
any wrongdoing by May. No error has been shown.
Hearsay Testimony
          May next contends the trial court erred by overruling his objection to specific
hearsay testimony. In the testimony, the prosecutor was asking Baird about a conversation
she had with Alderete, who later testified.



QDid she [Alderete] tell you why she suspected [molestation]?
 
AWell, in a way, yes, she did, because she told me that he was
close to [B.B.]
 
[Defense Counsel]: Your Honor, I'm going to object, it's
hearsay.
 
THE COURT: Overruled.
 
QGo ahead.
 
AShe told me that he was close to [B.B.], and it's like everything
was for [B.B.], like numerous pictures and the things that he had bought
[B.B.], TV's [sic], VCR's [sic], gymnastic mats, just numerous things he had
bought her, and when they found out he had started a trust fund in her name,
and she told me that she suspected it because of all of that. 

          Hearsay is a statement, other than one made by the declarant while testifying at the
trial, offered for the truth of the matter asserted. Tex. R. Evid. 801(d). The State argues
this is not hearsay because the recounted statement is not one recounted for fact, but for
the declarant's belief or opinion about her suspicions, not statements of fact. Such
reasoning, if approved, would make any opinion admissible, even though the facts on
which such opinion is based are inadmissible, without recourse to the hearsay objection. 
This is not consistent with the rule. "Matter asserted" includes any matter explicitly
asserted, and any matter implied by a statement, if the probative value of the statement
as offered flows from the declarant's belief as to the matter. Tex. R. Evid. 801(c). Hearsay
evidence is not admissible. See Tex. R. Evid. 802. The matter asserted in this case was
the opinion. It was hearsay and inadmissible. 
          We now turn to a harm analysis. In our review of nonconstitutional error, we are to
disregard errors, defects, irregularities, or variances that do not affect substantial rights of
the accused. Tex. R. App. P. 44.2(b). A "substantial right" is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict. King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record as a whole, it
appears the error "did not influence the jury, or had but a slight effect," we must conclude
that the error was not harmful and allow the conviction to stand. Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In order to properly conduct a harm analysis under Rule 44.2(b), we conduct a harm
analysis as a type of "other errors," and we must disregard the error unless it "affect[ed]
[appellant's] substantial rights." Tex. R. App. P. 44.2(b). For claims of nonconstitutional
error, the Texas Court of Criminal Appeals has held that "a conviction should not be
overturned unless, after examining the record as a whole, a court concludes that an error
may have had 'substantial influence' on the outcome of the proceeding." Burnett v. State,
88 S.W.3d 633, 637 (Tex. Crim. App. 2002). In other words, if we have "a grave doubt"
that the result was free from the substantial influence of the error, then we must reverse. 
Id. The court has explained that "grave doubt" means that "in the judge's mind, the matter
is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of
the error." Id. at 637–38, citing O'Neal v. McAninch, 513 U.S. 432, 435–36 (1995). Thus,
"in cases of grave doubt as to harmlessness the petitioner must win." Id. at 638.
          In considering harm, we must review the entire record to determine whether the
error had more than a slight influence on the verdict. See King, 953 S.W.2d at 271, citing
Kotteakos v. United States, 328 U.S. 750, 776 (1946); Reeves v. State, 969 S.W.2d 471,
491 (Tex. App.—Waco 1998, pet. ref'd). If the court finds that the error did have more than
a slight influence on the verdict, it must be concluded that the error affected the
defendant's substantial rights in such a way as to require a new trial. Reeves, 969 S.W.2d
at 491. If the court has grave doubts about the error's effect on the outcome, the case
must be remanded for a new trial. Id. Otherwise, the court should disregard the error. Id.;
Lopez v. State, 990 S.W.2d 770, 778 (Tex. App.—Austin 1999, no pet.).
          The hearsay at issue was presented by the State during its case-in-chief before
Alderete testified. At best, it constitutes a pre-emptive strike on her expected testimony,
for the State cannot make the argument that it was impeachment evidence because
Alderete had not yet testified. Alderete categorically denied that she said what Baird
attributed to her. The harm lies in the fact the State was improperly allowed to present
evidence through the outcry witness that Alderete had suspected that May was molesting
B.B. even before she had made any outcry. The recounting of her suspicion is a portion
of the testimony that does not appear elsewhere. 
          As previously discussed, from a factual sufficiency viewpoint, the evidence in this
case is conflicting. When that is the case, an error in admitting evidence, that would not
otherwise be egregious, may nevertheless have profound results. However, under all of
the facts of this case, and after a complete review of the record, we find it unlikely that the
single recounting of hearsay about a witness' "suspicion," especially when strongly and
directly denied by the declarant herself, had more than a slight influence on the verdict. 
The contention of error is overruled.
Conclusion
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      June 23, 2004
Date Decided:         June 24, 2004

Publish