In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00031-CR

                                                ______________________________

 

 

                                        OLIVER HART,
III, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 5th Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 06F0380-005

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

Oliver Hart, III, pled not guilty to the
charge of possession of a controlled substance (methamphetamine), of more than
400 grams.  After a jury trial where
Michelle Holmes testified against Hart, he was found guilty, and the trial
court sentenced him to forty-five years’ imprisonment.  The trial court also awarded $1,500.00 in
attorney’s fees against Hart.  

In a previous case, Hart absconded during
his trial, was tried in absentia, found guilty, and assessed a thirty-year
sentence.  As a result, the police had an
arrest warrant for Hart and    
information that he was in Holmes’ apartment with a gun.  When the police arrived, Holmes told them
Hart was “in the back room with a gun.” 
The police searched the premises and found Hart hiding in a closet.  While searching for Hart and the gun, the
police discovered 400 grams of methamphetamine in various places throughout the
apartment.  

On appeal, Hart argues that:  (1) he was denied a speedy trial; (2) there
was insufficient evidence corroborating Holmes’ testimony; and (3) there was
legally and factually insufficient evidence to support the award of attorney’s
fees. 

We modify the judgment because there is no
evidence supporting the award of attorney’s fees, and we affirm the judgment,
as modified, because:  (1) Hart was not
denied a speedy trial; and (2) there is sufficient evidence that tends to
connect Hart to the charged crime.

I.          Speedy
Trial

 

            In his first
point of error, Hart contends that his constitutional rights were violated
because he did not receive a speedy trial.  


            An accused’s
right to a speedy trial is guaranteed by both the Constitutions of the United
States and Texas.  U.S. Const. amends. IV, XIV; Tex. Const.
art. I, § 10.  In determining whether an
accused has been denied his or her right to a speedy trial, a court must use a
balancing test “in which the conduct of both the prosecution and the defendant
are weighed.”  Barker v. Wingo, 407 U.S. 514, 530
(1972).  The factors to be weighed in the
balance include, but are not necessarily limited to, the length of the delay,
the reason for the delay, the defendant’s assertion of his or her speedy trial
right, and the prejudice to the defendant resulting from the delay.  Id.  No single factor is necessary or sufficient
to establish a violation of the right to a speedy trial.  Id.
at 533; Dragoo v. State, 96 S.W.3d
308, 313 (Tex. Crim. App. 2003).  In
conducting this balancing test, “the conduct of both the prosecution and the
defendant are [to be] weighed.”  Id. at 530.  The defendant’s burden of proof on the latter
two Barker factors varies inversely
with the State’s degree of culpability for the delay.  Cantu
v. State, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing Robinson v. Whitley, 2 F.3d 562, 570
(5th Cir. 1993)).  “Thus, the greater the
State’s bad faith or official negligence and the longer its actions delay a
trial, the less [an accused] must show actual prejudice or prove diligence in
asserting [the] right to a speedy trial.” 
Id. at 280–81.

            As stated in
Zamorano v. State, “In reviewing the
trial court’s ruling on appellant’s federal constitutional speedy trial claim,
we apply a bifurcated standard of review: 
an abuse of discretion standard for factual components, and a de novo
standard for the legal components.”  84
S.W.3d 643, 648 (Tex. Crim. App. 2002). 
Review of the individual Barker
factors necessarily involves fact determinations and legal conclusions, but “the
balancing test as a whole . . . is a purely legal question.”  Cantu,
253 S.W.3d at 282 (quoting Zamorano,
84 S.W.3d at 648 n.19).  “Under the abuse
of discretion standard, appellate courts defer not only to a trial judge’s
resolution of disputed facts, but also to his right to draw reasonable inferences
from those facts.”  Cantu, 253 S.W.3d at 282.

            We
examine the four Barker factors
separately. 

 

            A.        Length
of Delay

 

            Hart was
arrested on May 6, 2005, but was not tried until January 2010.  Four years and eight months elapsed between
Hart’s arrest and his trial.  Such a
lengthy delay is presumed to be prejudicial.  Doggett
v. United States, 505 U.S. 647 (1992)
(most delays of eight months or more are considered presumptively unreasonable
and prejudicial); Barker, 407 U.S. at
530. Therefore, this factor weighs against the State.

            B.        Reason
for the Delay

 

            When the
delay is determined to be presumptively prejudicial, the burden shifts to the
State to justify the delay.  Love v. State, 909 S.W.2d 930, 947 (Tex.
App.—El Paso 1995, pet. ref’d) (citing
Green v. State, 760 S.W.2d 50, 52 (Tex. App.—El Paso 1988, no pet.)); see also Turner v. State, 545 S.W.2d
133, 137–38 (Tex. Crim. App. 1976).  Under
Barker, “different weights” should be
attributed to this factor depending upon the different reasons for the delay.  407 U.S. at 531; Munoz v. State, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999).  A “deliberate attempt to delay the trial”
weighs heavily against the State, whereas a “more neutral reason, such as
negligence or overcrowded courts, should be weighed” less heavily against the
State.  Munoz, 922 S.W.2d at 822 (quoting Barker, 407 U.S. at 531).  “A
valid reason for the delay should not be weighed against the State.”  Id.  

            Here, the
State made no effort to try Hart for the charged offense until 2009, and the
State offered no explanation for this delay. 
However, the record does offer evidence regarding the reasons for the
delay from February 2009 to January 2010. 
The public defender’s office was appointed to represent Hart in February
2009, but five months later, in July, Hart moved to dismiss his public defender
and requested new appointed counsel. 
Hart retained Paul Hoover in August 2009, and Hoover requested, and
received, a continuance.  Hoover
unexpectedly passed away in October 2009, and John Stroud, III, was appointed
to take over Hoover’s cases, including Hart’s. 
In December, Stroud withdrew from the case, and the court, once again,
appointed the public defender’s office to represent Hart on January 7,
2010.  Eight days later, Hart filed a
motion to dismiss for denial of a speedy trial. 
At most, Hart is responsible for seven of the fifty-six months of the
delay in this trial.  Due to the extended
delay for which the State offered no explanation, this factor weighs heavily
against the State.

            C.        Assertion
of the Right to Speedy Trial

 

            The accused bears the
responsibility to assert his or her right to a speedy trial.  Cantu,
253 S.W.3d at 282.  “The more serious the
deprivation, the more likely a defendant is to complain.” Id. at 283 (quoting Barker,
407 U.S. at 531).  An accused’s assertion
of his or her speedy trial right (or the failure to assert the right) “is
entitled to strong evidentiary weight in determining whether the [accused] is
being deprived of the right.”  Id.; Harris
v. State, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) (“[A]ppellant’s lack
of a timely demand for a speedy trial indicates strongly that he did not really
want a speedy trial.”); see Barker,
407 U.S. at 536 (“[B]arring extraordinary circumstances, we would be reluctant
indeed to rule that a defendant was denied this constitutional right on a
record that strongly indicates . . . that the defendant did not want a speedy
trial.”).  As the Fifth Circuit stated in
United States v. Palmer, “the point
at which the defendant asserts his right is important because it may reflect
the seriousness of the personal prejudice he is suffering.”  537 F.2d 1287, 1288 (5th Cir.1976).  

            Here,
shortly after being appointed in January 2010, Hart’s public defender filed a
motion to dismiss for denial of a speedy trial.[1]  However, Hart failed to seek a speedy trial
before moving to dismiss the charges against him.  “Filing for a dismissal instead of a speedy
trial will generally weaken a speedy-trial claim because it shows a desire to
have no trial instead of a speedy one.”  Cantu, 253 S.W.3d at 282–83.  If a defendant seeks to dismiss his or her charges
prior to seeking a speedy trial, “he should provide cogent reasons” for doing
so.  Id.
at 283.  “Repeated requests for a
speedy trial weigh heavily in favor of the defendant, while the failure to make
such requests supports an inference that the defendant does not really want a
trial, he wants only a dismissal.”  Id. 


            Hart
failed to assert his right to a speedy trial for more than four years.  In January 2010, Hart filed to dismiss the
charges against him without having first sought a speedy trial and without
providing cogent reasons for such failure. 
We conclude these facts weigh against a finding that Hart was denied a
speedy trial.

            D.        Prejudice

 

            “Because ‘pretrial
delay is often both inevitable and wholly justifiable,’ the fourth Barker factor examines whether and to
what extent the delay had prejudiced the defendant.”  Cantu,
253 S.W.3d at 285 (quoting Doggett,
505 U.S. at 656).  In analyzing the
prejudice to the accused, we must do so in light of the accused’s “interests
that the speedy-trial right was designed to protect: (1) to prevent
oppressive pretrial incarceration[;] (2) to minimize the accused’s anxiety and
concern[;] and (3) to limit the possibility that the accused’s defense will be
impaired.”  Id. (citing Dragoo, 96
S.W.3d at 315).  Of these three types of
prejudice, “the last is the most serious ‘because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system.’”  Id.
(quoting Dragoo, 96 S.W.3d at 315).  Although “a showing of ‘actual prejudice’ is
not required in Texas,” the accused has the burden to make some showing of
prejudice that was caused by the delay of the trial.  Harris
v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (quoting Courtney v. State, 472 S.W.2d 151, 154 (Tex.
Crim. App. 1971)).

            Hart
has made no showing that he suffered anxiety or concern that resulted from this
case, beyond that associated with any criminal charge or investigation. “[E]vidence
of generalized anxiety, though relevant, is not sufficient proof of prejudice
under the Barker test, especially
when it is no greater anxiety or concern beyond the level normally associated
with a criminal charge or investigation.”  Cantu,
253 S.W.3d at 286.

            Hart also failed
to show how his defense was impaired, other than making unsupported, general
allegations regarding the “lack of reliability of witnesses’ memories from an
event that occurred almost five years ago . . . .” and “the difficulty of
finding witnesses from almost five years ago.” 
While Hart was incarcerated for much of the fifty-six months prior to
his trial in this case, the incarceration was not due solely to this
charge.  During the pendency of these
charges, Hart was incarcerated based on previous criminal convictions.  We conclude this factor weighs against Hart.

            Here, the State
failed to provide any explanation of why it waited almost five years to try
Hart on this charge.  However, Hart
failed to seek a speedy trial or produce evidence that he was prejudiced by the
delay.  Based upon the factors discussed
above and weighing the evidence in this case, we conclude that the trial court
reasonably concluded that Hart was not denied his constitutional right to a
speedy trial. 

II.        Accomplice
Witness Corroboration

 

            At trial, Holmes
testified against Hart, stating that the gun and drugs found in her apartment
were his.  Hart argues that there is
insufficient evidence to corroborate Holmes’ testimony.[2],
[3]  We disagree. 

            The test is
whether, after excluding the accomplice’s testimony, there is other evidence of
an incriminating character which tends to connect the defendant with the
commission of the offense.  Castillo v. State, 221 S.W.3d 689, 691 (Tex.
Crim. App. 2007).  It needs only to link
the accused to the commission of the crime and show that “rational jurors could
conclude that this evidence sufficiently tended to connect [the accused] to the
offense.”  Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).  If the State fails to produce any
nonaccomplice evidence tending to connect the defendant to the offense, then
the defendant is entitled to an acquittal.  See Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005); Taylor v. State, 10
S.W.3d 673, 685 (Tex. Crim. App. 2000).

            There
is no specific amount of nonaccomplice corroboration evidence that is required
for sufficiency purposes; “[e]ach case must be judged on its own facts.”  Gill v.
State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).  The Texas Court of Criminal Appeals has
stated that “[p]roof that the accused was at or near the scene of the crime at
or about the time of its commission, when coupled with other suspicious
circumstances, may tend to connect the accused to the crime so as to furnish
sufficient corroboration to support a conviction.”  Brown v.
State, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984).  However, the “mere presence alone of a
defendant at the scene of a crime is insufficient to corroborate accomplice
testimony.”  Golden v. State, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993).

            Here, Hart
was being sought on a felony arrest warrant based on his prior conviction for
manufacturing methamphetamine.  After
receiving information that Hart was at Holmes’s apartment, Lance Hall executed
the arrest warrant there and searched the apartment.  Hart did not rent the apartment or reside
there; however, there was evidence that Hart commonly stayed there, “in and out,”
for some time.  During the search of the
apartment, Hart was found hiding in a closet, and the officers also discovered
methamphetamine, a bag containing the chemicals necessary to manufacture
methamphetamine, and a shotgun.  The bag
found in the closet contained the shotgun, what appeared to be methamphetamine,
and the chemicals and various paraphernalia necessary to manufacture
methamphetamine.  In a letter Hart later
wrote to Holmes, he indicated that the shotgun (“the heat”) was “in your room
in my bag.”  On cross-examination, Hall
admitted that the shotgun and the bag were found in the bedroom Hart and Holmes
had been sharing, but that Hart was found hiding in a different bedroom.  

            Absent
Holmes’ testimony, there is no direct evidence that Hart possessed or
controlled the drugs or gun, but there is some circumstantial evidence tending
to link him to the charged offense.  The
corroborative evidence may be circumstantial, and it is not necessary that the
corroboration directly link the accused to the crime or be sufficient in itself
to establish guilt.  See Golden, 851 S.W.2d 291; Brown,
672 S.W.2d 487; Reynolds v. State,
489 S.W.2d 866 (Tex. Crim. App. 1972). 
The defendant’s presence at or near the scene of the crime, when coupled
with other suspicious circumstances, may be sufficient to link the defendant to
the crime.  Brown, 672 S.W.2d at 489. 
This is not a case where Hart was merely present at the time of the
arrest.  Rather, he was on the run from a
conviction for manufacturing methamphetamine; he hid in a closet when the
police arrived; and a bag containing a gun, methamphetamine, and the chemicals
necessary to manufacture methamphetamine were found in the bedroom he and
Holmes were sharing.  Hart’s 
letter to Holmes about the gun being in his bag has some further
tendency to connect him to the crime.  
We find sufficient corroborative evidence to support Holmes’ testimony.  Therefore, we overrule this point of
error.   

III.       Assessment of Attorney’s Fees

 

            The judgment
against Hart includes an award of $1,500.00 in attorney’s fees to the State
against Hart.  In his third and fourth
points of error, Hart contends that there is legally and factually insufficient
evidence to support the trial court’s award of attorney’s fees against him.[4]  We agree.

             The Texas Code of Criminal Procedure allows
the imposition of attorney’s fees “if the court determines that a defendant has
financial resources that enable him to offset in part or in whole the costs of
the legal services provided.”  Tex. Code Crim. Proc. Ann. art.
26.05(g) (Vernon Supp. 2010).  Here, the
trial court found that Hart was indigent. 
There is no evidence supporting a finding that he is able to offset any
of the costs of legal services provided. 
As the State candidly acknowledges, the assessment of attorney’s fees is
erroneous.   

            Accordingly,
we find the evidence supporting the court’s award of attorney’s fees is legally
insufficient.  We sustain this point of
error and modify the judgment to delete the attorney’s fee award.  

            As modified,
we affirm the judgment.

 

 

 

                                                                                    Jack
Carter 

                                                                                    Justice


            

Date Submitted:          September
20, 2010

Date Decided:             October
1, 2010

 

Do Not Publish 

 

 

 











[1]In
May 2006, Hart sought a speedy trial for trial cause numbers 04F0217-005,
04F0218-005, 04F0555-005, and 04F0556-005, but did not seek a speedy trial for
the charges against him in this case, trial cause number 06F0380-005.  In July 2009, Hart filed several pro se
motions to dismiss, arguing that the State failed to timely indict him on the
charges and serve him with a copy of the indictment.  However, his motions failed to request a speedy
trial or otherwise invoke his right to a speedy trial.





[2]Citing
our decision in Cochran v. State, the
State contends that by admitting his guilt during the punishment phase of the
trial, Hart waived any challenge to the sufficiency of the evidence
corroborating Holmes’ testimony.  107
S.W.3d 96, 100 (Tex. App.—Texarkana 2003, no pet.).  However, the defendant in Cochran challenged the sufficiency of
the evidence of guilt, rather than the sufficiency of the corroborating
evidence; therefore, Cochran is
inapplicable.  Id.  Furthermore, the
sufficiency of corroborating evidence is not subject to procedural default;
therefore, Hart’s admission of guilt in the punishment phase of the trial is
irrelevant.  Patterson v. State, 204 S.W.3d 852, 856–58 (Tex. App.—Corpus
Christi 2006, pet. ref’d).

 





[3]It
is undisputed that Holmes was an accomplice to the charged offense. 





[4]Hart
also argues that there is insufficient evidence to find that he had financial
resources to offset attorney’s fees.